310 So.2d 410 (1975)
Phyllis Watson SHEFFIELD, Appellant,
v.
Daniel Barnes SHEFFIELD, Appellee.
No. 74-785.
District Court of Appeal of Florida, Third District.
March 11, 1975.
Rehearing Denied April 22, 1975.
*411 Jepeway, Gassen & Jepeway, Miami, for appellant.
Creel & Glasgow, Miami, for appellee.
Before PEARSON and NATHAN, JJ., and GREEN, ROBERT A., JR., Associate Judge.
NATHAN, Judge.
This is an interlocutory appeal by the former wife from an order terminating alimony and changing the beneficiary of a life insurance policy on the husband's life to be the children, rather than the wife.
When the parties were divorced in December of 1968, the settlement agreement between the parties, which was made a part of the final divorce decree, provided, among other things, for maintenance by the husband of a life insurance policy with the wife as beneficiary, unconditional alimony payments to the wife or her estate for five years, regardless of her death or remarriage and by the husband or his estate regardless of his death, and continued monthly support payments to the wife after the end of five years. There is also provision that payments beyond five years will cease upon certain conditions, not here pertinent, or upon the condition of the remarriage of the wife.
In December of 1973, the husband filed a petition in circuit court for modification of the agreement. Discovery was initiated by and between the parties, and a final hearing was held, whereupon the court entered an order dated April 30, 1974, granting the husband's petition, discharging the husband's obligation with respect to payments accruing after January 1, 1974, ordering the wife to return all alimony payments for the period subsequent to January 1, 1974, and ordering that the life insurance policy on the life of the husband, wherein the wife is now the beneficiary, be endorsed or amended to provide that the three children be beneficiaries.
The facts appear without substantial controversy and have been found by the trial judge to be as follows:
"The basis of the husband's petition is that the wife has since about August, 1969, lived openly and continuously in New Jersey with one Berni Schoenfield in all personal respects as his wife, except for the benefit or process of ceremonial marriage."
* * * * * *
"1. The wife's acquaintance with Berni Schoenfield (the husband's as well) predates *412 the divorce between the parties. During 1968, some time prior to the filing of the action for divorce, the wife unilaterally started proceedings to open a joint bank account between herself and Mr. Schoenfield."
"2. In March, 1969, the wife went to New Jersey, where Berni Schoenfield then lived, and began looking for a house in which she and Berni Schoenfield, by prior understanding of some six months, would live. She found a house in Englewood, New Jersey, in August, 1969, which Berni Schoenfield approved, and into which the two of them moved and where they have since continuously lived as the sole occupants, except for periods of time when her daughter, Laura, and her son, David lived there."
"3. Mr. Schoenfield is a layout director for the national publication, Business Week, and Mr. Schoenfield pays the mortgage installments of approximately $260. and the utilities of approximately $40., each monthly, and has the utility deposit in his name. He maintains a workshop in the basement of the home. Both he and Mrs. Sheffield have telephones at the home address. She uses his automobile. She provides Mr. Schoenfield with breakfast and dinner. They have separate bedrooms but occasionally share the same one. As she said: `There has been something going on a few times.'
"4. The wife described Mr. Schoenfield as a `very and close companion  a very good and close companion'. They have discussed the possibility of their being married. She thought at one time they would get married; and she even told Dan (the husband) at one time she would marry Berni. Mr. Schoenfield accompanied the wife to the three weddings of the Sheffield children, each in different cities; and appeared, at the daughter's request in the family wedding picture (Husband's Exhibit No. 2). The wife and Mr. Schoenfield have traveled together often, including a three weeks trip to Italy, several trips to Florida, to Roanoke at least three times a year to see Pat and Danny (her son) in Washington, and several visits to the Wolffs in Connecticut.
"5. In brief, she has never made any secret of their living together, that it was known to the youngsters.
"6. While the wife and Mr. Schoenfield are not ceremonially married, and while both Florida and New Jersey do not recognize common law marriages, the personal relationship between the two is the equivalent of a de facto marriage if not a de jure marriage."
The single point presented urges error upon the following conclusions of law included in the order appealed:
* * * * * *
"1. The admitted relationship between the wife and Mr. Schoenfield constitutes a material and substantial change in the circumstances of the parties, sufficient to authorize the interposition of the Court to modify or terminate the judgment with respect to alimony subsequent to 1973.
"2. It would be contrary to public policy and unconscionable to require the husband to continue alimony or support payments to the former wife under the circumstances here existing. While the settlement agreement between the parties was a valid contract between them when it was made, and the contract by its express terms provides for a termination in event of the wife's remarriage, which has not occurred, it was not within the purview of the husband's contemplation that he was agreeable to supporting his former wife under the conditions here existing; and the husband is not bound to have anticipated against the unlawful or improper conduct of the wife."
* * * * * *
The appellant, former wife, urges that the terms of the property settlement *413 agreement, freely entered into between the parties, are clear. The husband agreed to pay alimony to the wife, in the amount of $600.00 per month, which payment was to continue until such time as the wife remarried a person other than the husband. Additionally, the husband agreed to pay the premiums and maintain the wife as the sole beneficiary under a life insurance policy in the amount of $10,000.00 as long as the wife remained unmarried. It is undisputed that the wife and Schoenfield are not married and that common law marriages are not recognized in either New Jersey or Florida. Moreover, under present Florida law, Fla. Stat. § 61.08, adultery is not always a bar to alimony but is simply a factor to be taken into consideration. This, of course, is entirely different from the old law. If adultery is not a bar to alimony, then it is inconceivable that fornication could be a basis for a modification terminating alimony. It was error for the trial court to terminate the wife's alimony based on what was called a "de facto" remarriage.
It is obvious that a ceremonial marriage offers various benefits, as well as legal rights, duties and obligations which do not obtain in the wife's relationship with Mr. Schoenfield. He is under no obligation to support her, or even to stay with her, and she is neither entitled to dower or government social security benefits upon his death, nor is she recognized by the world at large as Schoenfield's wife.
The appellant relies upon the holding in Campbell v. Campbell, Fla.App. 1969, 220 So.2d 920 for reversal. She points out that this case stands for the proposition that when the terms of a property settlement agreement are clear and unambiguous the courts cannot construe them in a manner which violates the clear language of the agreement. She further points out the heavy burden upon a party seeking a modification, see Scott v. Scott, Fla.App. 1973, 285 So.2d 423, and that the Supreme Court of Florida has held that a former husband's allegation that his former wife is leading a dissolute life is not a ground for modification of alimony payments. Cf. Phillippi v. Phillippi, 148 Fla. 393, 4 So.2d 465 (1941). This precedent governs the instant situation, and it is our opinion that the trial court has committed reversible error in terminating the husband's alimony payments to the wife and in ordering her to return the payments for the period subsequent to January 1, 1974, on the basis of a "de facto" marriage. However, § 61.14, Fla. Stat., provides that alimony and property settlement agreements may be modified pursuant to change in circumstances or financial ability. We, therefore, remand this cause to the trial court for further determination as to the need and ability of the parties and their circumstances as of the date the trial judge deems appropriate but no earlier than the date of the filing of the petition.
As to that portion of the order wherein the court ordered a change of beneficiary, with the children in place of the wife, of an insurance policy provided for in the agreement and the judgment,[1] the husband's agreed obligation to maintain the insurance policy for the wife's benefit was a property right acquired as a part of a property settlement and, as such, was not subject to modification pursuant to Fla. Stat. § 61.14. Fowler v. Fowler, Fla.App. 1959, 112 So.2d 411.
For the reasons stated the order is reversed, the alimony payments are reinstated and the beneficiary of the insurance policy will remain the wife.
Reversed and remanded with directions.
*414 PEARSON, Judge (dissenting).
I agree that the precedent cited above is governing upon this court, but I do not agree that it is governing in this case. The authority to modify the judgment as to alimony, irrespective of whether there was an agreement between the parties, exists in Fla. Stat. § 61.14. The courts are directed to use this power to achieve a reasonable and lawful settlement of the disputes between parties. In so doing, the courts will be governed by substance rather than form. See Underwood v. Underwood, Fla. 1953, 64 So.2d 281. The trial court was, therefore, upon solid legal ground when he found that an arrangement which carried most of the benefits of marriage was a change in circumstances recognized by the statute as a basis for the modification of a judgment directing the payment of alimony. Therefore, I would affirm that portion of the order which terminated the alimony payments.
NOTES
[1] "3. That the $10,000. insurance policy on the life of Daniel Barnes Sheffield, wherein the said Phyllis Watson Sheffield is now beneficiary, be endorsed or amended to provide that the three children of the marriage between the parties be equal and irrevocable beneficiaries; and the obligation of Daniel Barnes Sheffield to pay all premiums and not to allow any loans or liens against said policy shall in all respects continue."