409 So.2d 1135 (1982)
Joe H. ANDREWS, Appellant/Cross-Appellee,
v.
Becky V. ANDREWS, Appellee/Cross-Appellant.
No. 81-526.
District Court of Appeal of Florida, Second District.
February 10, 1982.
*1136 Stephen C. Watson of Hahn, Breathitt, Roberts & Watson, Lakeland, for appellant/cross-appellee.
Judith Ann Cutting, Lakeland, for appellee/cross-appellant.
BOARDMAN, Acting Chief Judge.
The husband appeals and the wife cross-appeals an order of modification of the final judgment of dissolution of the parties' marriage and a supplemental order modifying the order of modification. We reverse.
Final judgment of dissolution, which approved and incorporated the parties' property settlement agreement by reference, was entered on May 1, 1979. An amended final judgment, specifying the monthly alimony award to the wife to be $1250, but ordering that all other provisions of the original final judgment were to remain in full force and effect, was entered on May 3, 1979.
The property settlement agreement purported to be a "settlement of all property rights, matters and all things between them arising out of the marriage." It provided that the wife was to receive all furnishings and appliances (other than the husband's personal property), ownership of the marital home, the 1976 Oldsmobile Regency automobile, two $1000 certificates of deposit, $9302 of the $28,867 in the parties' IMCC credit union accounts, half of the parties' U.S. savings bonds, the husband's interest in two personal debts totalling $10,500 owed the parties by family members, half of the 1420 shares of IMCC stock owned by the parties, half of the husband's $18,613.10 IMCC investment plan, a beneficial interest in the husband's life insurance policies of one half their value up to $100,000, $15,000 per year permanent periodic alimony, payment of her share of the parties' 1978 income tax liability by the husband, and control and ownership of an educational trust account for one of the parties' children. The husband was to receive his personal property, the remainder of the funds in the IMCC credit union accounts, half of the parties' U.S. savings bonds, half of the IMCC stock, half of his IMCC investment plan, and his stock in Phos-Chem. In addition, the wife was to pay her own attorney's fees.
On July 1, 1980, the wife filed a petition for modification of her alimony award, alleging that both her needs and the husband's ability to pay had substantially increased.
At the hearing on the wife's petition for modification, the wife, age fifty-three, testified that during the marriage the husband paid all the bills and she was unaware of what it cost to maintain their household. She also knew nothing about their taxes or insurance, nor was she aware of the costs of their membership in the Lone Palm Country Club or of how much it cost her to play golf there. She had been unable to play golf at Lone Palm since the divorce because she could not afford it. She did not know she would have to pay income tax on her alimony. In addition, she had had to expend money for certain routine medical and dental expenses, which she had not thought to anticipate because the husband had always taken care of everything. She was reduced to a tight budget. Some of the items included in her financial affidavit, *1137 such as recreation, were things she was currently doing without, but felt were reasonable expenses. Although she was seeking attorney's fees, she had the means to pay her attorney herself without invading her assets, and she had not had to liquidate any assets to maintain herself during the divorce. She had received a copy of a letter dated January 19, 1979, from her attorney to the husband's attorney concerning the proposed property settlement agreement. That letter discussed, inter alia, the wife's expected income tax and medical insurance liabilities. However, she testified, the contents of this letter meant nothing to her, and she did not have any independent recollection of what the letter discussed. The wife had completed her education through one year of college, but had not worked during the marriage except for the first year. She had tried to sell real estate after the dissolution, but had been unsuccessful and had given it up. She was not employed at the time of the hearing, but there were no impediments to her seeking employment other than her lack of experience.
The husband testified that he was currently grossing $1000 more per month than he had been at the time of the divorce. He had also received an additional $1000 more for the current year in incentive pay. Moreover, his income from his Phos-Chem stock had increased by $1000 per month. However, his current wife, who had been earning $15,000 per year, was no longer working. In the current year he had grossed about $60,000 as a result of exercising certain IMCC stock options and then selling the stock. At the time of the divorce, he retained net assets then valued at $110,000, including the stock options, then valued at $18,000. He stated at trial that the wife must have been aware of these stock options, since he had exercised some of them before the divorce.
The wife testified on rebuttal that she was not aware of the stock options prior to the dissolution and did not even know what the husband's earnings were prior to or at the time of the divorce.
The husband then further testified that his financial position had changed from a net monthly surplus at the time of the divorce to a current net monthly deficit of $1918. However, his net worth had increased to $175,000, primarily due to an increase in the value of his stocks and bonds. The Phos-Chem stock option had not been considered at the time the property settlement agreement was drawn up. He could not recall why, but IMCC stock had gone up and down over the years, and it was only upon reconstructing his 1979 financial status in order to defend himself in the instant proceeding that he had discovered that the option had had some value at the time of the divorce.
Following the hearing, the trial court entered an order finding
that the evidence reflects an increase in the Wife's needs over those contemplated at the time of the agreement between the parties dated March 27, 1979, and further that a substantial asset, the Husband's stock options, was either not considered at the time of the aforesaid agreement or alternatively said asset resulted in a substantial change in the Husband's financial position since March 27, 1979, and being otherwise fully advised in the premises, it is, therefore,
ORDERED AND ADJUDGED:
1. That the Husband shall pay to the Wife periodic alimony in the increased amount of $1,650.00 plus the Clerk's fee of $2.00 for a total of $1,652.00 per month as periodic alimony.
The order also required the husband to pay the attorney's fee incurred by the wife in these modification proceedings. The trial court then entered a supplemental order confirming its finding that the wife's needs had substantially increased, but changing the monthly alimony award to $1400 as a result of "certain clerical and mathematical errors... ." This appeal followed timely.
A party seeking to modify an alimony award fixed by agreement carries an exceptionally heavy burden. Jaffee v. Jaffee, 394 So.2d 443 (Fla. 3d DCA 1981); Coe v. Coe, 352 So.2d 559 (Fla. 2d DCA 1977). As this court held in Tsavaris v. Tsavaris, *1138 307 So.2d 845, 847 (Fla. 2d DCA), cert. denied, 322 So.2d 914 (Fla. 1975), quoting from Scott v. Scott, 285 So.2d 423 (Fla.2d DCA 1973): "`Where the amount of alimony is based upon agreement a heavier burden rests upon a party seeking a modification than would otherwise be required.'"
The wife here did not carry this burden. The expenses she claims have increased her need do not constitute a change in circumstances. These expenses were routine and such as to be expected by anyone of average intelligence and education. The wife here meets these qualifications, having had a year of college and there being no evidence that she has any mental incapacity. Moreover, the wife was represented by able counsel in the original dissolution proceeding, and the documentary evidence establishes that both she and her counsel were aware of her tax and insurance liabilities and that counsel took these factors into consideration in negotiating the settlement. We find it difficult to believe that the wife was quite as naive as she claims to have been. Even if she were, however, such naivete would not constitute a change in circumstances upon which to base an increase in her alimony award, particularly when she was represented by counsel at all stages of the property settlement negotiations.
In addition, the trial court erred in awarding the wife attorney's fees when she was admittedly able to pay her own fees without invading her assets. "[W]hen a party has been shown to have the ability to pay for the services of his or her attorney, it is improper to require the other party to pay for those services, even though he or she may have the ability." Butts v. Butts, 362 So.2d 349 (Fla.1st DCA 1978).
Accordingly, the original and supplemental orders modifying the alimony award to the wife and requiring the husband to pay the wife's attorney's fees are REVERSED and the cause REMANDED for further proceedings consistent with this opinion.
DANAHY and SCHOONOVER, JJ., concur.