467 So.2d 465 (1985)
John SCHNEIDER, Appellant,
v.
Norma Jean SCHNEIDER, Appellee.
No. 83-1650.
District Court of Appeal of Florida, Fifth District.
April 18, 1985.
*466 John B. Root III, Orlando, for appellant.
William L. Whitacre, of Fishback, Davis, Dominick, Bennett, Foster, Owens & Watts, Orlando, for appellee.
ORFINGER, Judge.
The former husband appeals from an order denying his petition for modification of the final judgment of dissolution, by which he sought the elimination or reduction of the permanent alimony awarded to the wife. We reverse.
Among other grounds, appellant alleged that the former wife was living with another man, and that such arrangement constituted a change of circumstances sufficient to warrant modification. In the order denying modification, the trial court made no finding with regard to this issue, but denied the petition for the principal reason that "there has not been a substantial change in the economic circumstances of the parties to justify a modification of alimony."
This finding is not supported by the undisputed evidence presented at the hearing. The former wife conceded that for approximately three years prior to the hearing she had been living as man and wife with Rex Springer whom she hoped to marry. They lived in the house which had been the marital residence of the parties here, but which had been awarded to the wife. Springer contributed little or nothing to the expenses of the household, because his income was sporadic and he had many obligations. Although the evidence supports a finding that Springer does not contribute to appellee's support, the evidence is susceptible of a finding that to some extent, appellee contributes to Springer's support.
*467 The trial court made a finding that appellee's financial position and her standard of living was below that which she enjoyed during the marriage, and that appellant's position was the same or higher than during the marriage, but this alone is not a legal basis for denying modification. While two may or may not be able to live as cheaply as one, two living separately most likely cannot live as cheaply as two living together. Thus, depending on the financial circumstances of the parties, the provisions of a final judgment of dissolution may very well leave the parties in a financial posture not as good as the standard they enjoyed during the marriage. This often is one of the consequences of divorce.
The test for modification is set forth in section 61.14, Florida Statutes (1983), viz: a change in circumstances or financial ability of the parties from the date of the order or judgment which made the award. Since the entry of the final judgment, the financial condition of both parties has improved considerably. Both earn more money than they did when their marriage was dissolved. Although the wife's earnings have increased in a greater percentage than has the husband's and although the wife has been able to make major improvements and additions to the former marital residence, these factors alone might not justify a downward modification of the alimony.
However, what the trial court does not appear to have taken into account is how much, if any, of appellant's alimony payment was being used to support appellee's live-in boyfriend. In Stuart v. Stuart, 385 So.2d 134 (Fla. 4th DCA 1980), the court said:
Obviously, if a spouse receiving alimony enters into an arrangement which involves living with a member of the opposite sex, that is rather clear evidence of a substantial change of circumstances. There will either be financial or in kind contributions of the new partner to be taken into account, or, if the contributions go from the spouse to the new partner, the fact that the spouse is providing board and room to the new partner is evidence that the fair market value of those and any other contributions is some measure of the extent to which periodic alimony is excessive.
Id. at 135.
Finding that the relationship had ended, however, the Stuart court affirmed the order denying modification on the authority of Sheffield v. Sheffield, 310 So.2d 410 (Fla. 3d DCA 1975), cert. denied, 328 So.2d 844 (Fla. 1976). In Sheffield, the court held that the mere fact that the former wife had entered into a living arrangement with another man which could be characterized as a "de facto marriage" was not in itself, without more, a sufficient basis for modification of an alimony award. The Sheffield court did, however, remand the case to the trial court for a determination of whether the financial circumstances of the parties had changed since at least the filing of the petition for modification. Sheffield thus supports the view that a "de facto marriage" may constitute a factor in determining whether the financial circumstances of the parties have changed.
In an analogous situation, this court has recognized that to the extent rehabilitative alimony serves a support purpose, and the support of the recipient spouse has been undertaken by her new, but unmarried partner, at least the support portion of the alimony award should be terminated. Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983). See also, Kristensen v. Kristensen, 433 So.2d 598 (Fla. 5th DCA 1983). Because permanent alimony serves a support purpose, i.e., it is used to provide the needs and necessities of life to a former spouse, Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), the second factor in the Stuart analysis comes into play: to the extent that the permanent alimony paid to the recipient spouse is being used to support a new partner, the alimony payment should be deemed to be excessive.
We therefore reverse the order appealed from and remand the cause to the trial *468 court to reconsider the issues, among which should be the question of how much, if any, of the support provided to appellee by appellant is being used to support appellee's boyfriend. To that extent the alimony payment should be reduced.
REVERSED and REMANDED.
SHARP, J., concurs.
FRANK D. UPCHURCH, Jr., J., concurs in part, dissents in part.
FRANK D. UPCHURCH, Jr., Judge, concurring in part, dissenting in part.
While I concur in the reversal, I do not concur with the remand for the purpose stated. I would reverse for termination of alimony.
There is apparently no dispute that the relationship between appellee and her "companion" was a de facto marriage, the only elements missing being a license and ceremony. If it had been legitimized, alimony would terminate, but the majority holds that because it is illegitimate, the ex-husband's obligation is reduced only to the extent his ex-wife contributes to the support of his replacement. Admittedly my views on the social acceptance of the modern practice of persons of the opposite sex living together outside of wedlock are somewhat anachronistic. However, I think we expect too much when we require a person to support an ex-spouse who has "married" another, legally or illegally.
The obligation to assist in the support of a dependent divorced wife or husband receives a more or less stoic acceptance and compliance not only because it is legally required, but because of a deliberate and conscious duty undertaken with their marital vows. Once cohabitation with a new partner is established, an ex-spouse may be legally compelled to continue paying support, but few will accept it even stoically as their duty.
The receipt of alimony, especially when the amount is substantial, obviously acts as a deterrent to remarriage. If the consequences of its loss can be avoided by the simple expedient of avoiding solemnization of the new relationship, it can be realistically predicated that many will forego formal marriage, thereby continuing the obligation of their former spouse and the companionship of their new "companion", while subject to no sanction by a progressively tolerant society.
I concede that the problem of proof in establishing a de facto marriage may be severe, but that is not an issue here. As a matter of public policy, I do not think persons who legitimize their relationships should be penalized, while persons who do not are not.