509 So.2d 1141 (1987)
Virginia L. DePOORTER, Appellant,
v.
Win Edward DePOORTER, Appellee.
No. BO-241.
District Court of Appeal of Florida, First District.
June 12, 1987.
*1143 Michael T. Webster, of Webster & Colpitts, Shalimar, for appellant.
Michael A. Jones, of Stanley Bruce Powell, P.A., Niceville, for appellee.
JOANOS, Judge.
Appellant Virginia L. DePoorter (wife) appeals the trial court's order modifying the final judgment of dissolution of marriage, and thereby reducing the amount of alimony due the wife. The points presented for our review are the trial court's findings that the wife is involved in a de facto marriage, and that the alleged de facto marriage resulted in a substantial change of circumstances warranting a reduction of the husband's alimony obligation. We reverse and remand for further proceedings.
The parties were divorced on November 29, 1983, following a 28 year marriage. During 26 years of the marriage, the husband had been on active duty with the United States Air Force. When the final decree was entered, the husband was a full colonel earning a net income of approximately $3,968 per month. The husband has since retired from active duty. The final judgment incorporated the separation and property settlement agreement entered into by the parties. The alimony provision set forth in the agreement states:

Alimony. The Husband shall pay to the Wife permanent periodic alimony in the amount of $1,000.00 per month. The obligation of the Husband to make any alimony payments shall terminate in the event the Wife dies or remarries.
On February 24, 1986, the wife filed a motion for continuing writ of garnishment alleging the husband failed to make alimony payments due December 1, 1985; January 1, 1986; and February 1, 1986. On April 10, 1986, the husband petitioned for modification, alleging the wife's needs had been reduced due to her "companionship and living arrangement with a man of substantial means who pays a considerable amount of the former wife's normal living expenses," and that the husband's income had decreased since entry of the final judgment of dissolution. In response to the husband's petition for modification, the wife affirmatively alleged that any reduction in the husband's income was voluntary on his part and was fully anticipated at the time the parties entered into the separation and property settlement agreement.
The record reflects that in November 1983, when the divorce became final, the wife's total monthly expenses were $1,688.67, and her total monthly income was $1,791.47, which included $1,200 a month from the husband and approximately $400 to $450 in earnings from the wife's job at a convenience food store.[1] The wife's financial affidavit filed after the husband's petition for modification, shows her total monthly income as $1,350, which is comprised of $1,000 alimony and $350 rental income.[2] The wife's monthly expenses include: mortgage  $450; rent  $250; groceries  $150; automobile (maintenance, gas, oil, insurance, tag)  $128; life insurance  $47.30; utilities  $40; telephone  $25; sewage  $25; incidentals (cable, pest control, etc.)  $44; medical  $15; personal (cosmetics, gifts, etc.)  $60; credit card payments  $65.
At the time of the divorce, the parties' adult son lived with the wife in Niceville. Subsequently, the parties' daughter went through a divorce, and returned home with her two young children. Shortly thereafter, the wife, according to her testimony, terminated her employment due to health problems. At the end of July 1985, 2 1/2 years after the divorce, the wife moved to Palm Harbor, where she shares a patio home and living expenses with a Mr. Perry. *1144 The wife testified her present living arrangement was brought about in part because she was unable to meet the increased living costs occasioned by the addition to her household of her daughter and grand-children,[3] and in part because she found the living arrangement too stressful.
It is undisputed that the alimony provision contained in the parties' agreement contemplated the amount of the husband's income after his retirement.[4] The husband acknowledged that when he entered into the agreement, he considered the $1,000 monthly alimony a reasonable amount. He stated he sought a reduction in that amount because he considered the wife was enjoying all the benefits of marriage without the formality of a ceremony. However, the husband admitted that he communicated with the wife about a year after their divorce, and asked her to consider a reduction in alimony. Later, well before the wife's shared-living arrangement with Mr. Perry, the husband wrote to the wife, to advise that he intended to reduce his alimony obligation.
On June 25, 1986, the trial court entered an order finding the wife had entered into a de facto marriage, and as a result of this living arrangement the financial needs of the wife had been reduced. Pursuant to these findings, the trial court reduced the alimony award from $1,000 to $600 a month.
We note at the outset that Florida jurisprudence does not accord legal status to the concept of de facto marriage. In the context of an alimony modification proceeding, the test is whether there has been a substantial change in the circumstances or the financial abilities of the parties since entry of the agreement or order containing the alimony provision. S. 61.14, Fla. Stat. (1983); Kenyon v. Kenyon, 496 So.2d 839 (Fla. 2d DCA 1986); Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985). While unmarried cohabitation raises a presumption of changed circumstances, this factor alone will not support a reduction of alimony. Schneider v. Schneider; Sheffield v. Sheffield, 310 So.2d 410 (Fla. 3d DCA 1975), cert. denied, 328 So.2d 844 (Fla. 1976). See also Langbein, Post-Dissolution Cohabitation: "The Best of Both Worlds?", 57 Fla.Bar J. 656 (1983).
Permanent alimony, such as that awarded in the instant case, serves a support purpose, Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), so the focus is on economic necessities and not lifestyle. Phillippi v. Phillippi, 148 Fla. 393, 4 So.2d 465 (1941); Withers v. Withers, 390 So.2d 453 (Fla.2d DCA 1980), petition for review denied, 399 So.2d 1147 (Fla. 1981); Sheffield v. Sheffield, supra. Furthermore, when the amount of alimony is determined by a property settlement agreement entered into by the parties and approved by the trial court, the alimony provision will be interpreted in accordance with contract principles. Kenyon v. Kenyon, 496 So.2d 839 (Fla. 2d DCA 1986). In other words, the primary focus with regard to such an alimony award is the intent of the parties as it is revealed by the plain language of the agreement. Cunningham v. Cunningham, 499 So.2d 880 (Fla. 1st DCA 1986); Kenyon v. Kenyon; Mulhern v. Mulhern, 446 So.2d 1124 (Fla. 4th DCA), petition for review denied, 455 So.2d 1033 (Fla. 1984).
To sum up, the party seeking a reduction of an alimony award which was set by the trial court based upon an agreement of the parties, bears a heavier burden than is otherwise the case. Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987); Floyd v. Floyd, 393 So.2d 22, 23 (Fla. 2d DCA 1981); Freeland v. Purcifull, 347 So.2d 726, 727 (Fla. 2d DCA 1977). See also Adams v. Adams, 502 So.2d 1301 (Fla. *1145 1st DCA 1987); Sheffield v. Sheffield, 310 So.2d at 413. An agreement which fails to make provision for unmarried cohabitation may be interpreted as precluding reduction or termination of alimony on that ground. See Greenwald v. Blume, 312 So.2d 783 (Fla. 3d DCA), cert. denied, 324 So.2d 90 (Fla. 1975). Furthermore, if the language of the agreement "indicates a clear intention by the parties that the agreed-upon provisions for alimony would be controlling, and that its terms would be modifiable only as authorized therein," then the language is sufficient to operate as an implied waiver of any other ground for modification. Cunningham v. Cunningham, 499 So.2d 880, 882 (Fla. 1st DCA 1987).
The test for a substantial change of circumstances warranting modification "is a showing that the change is sufficient, material, involuntary and permanent in nature." Bish v. Bish, 404 So.2d 840, 841 (Fla. 1st DCA 1981). (emphasis in the original). One of the factors deemed insufficient, hence not a basis for modification, is an anticipated reduction in the paying spouse's income, e.g., a reduction due to retirement, which was contemplated when the parties entered into the agreement. Penland v. Penland, 442 So.2d 1054 (Fla. 1st DCA 1983); Landry v. Landry, 436 So.2d 353 (Fla. 1st DCA 1983); Ward v. Ward, 502 So.2d 477 (Fla. 3rd DCA 1987); Mastrilli v. Mastrilli, 478 So.2d 377 (Fla. 2d DCA 1985), review dismissed, 484 So.2d 9 (Fla. 1986).
When unmarried cohabitation is alleged as a factor warranting a finding of changed circumstance which will support modification of alimony, courts have applied a two-prong test which takes into account (1) whether the third party provides support to the recipient spouse, and (2) whether the recipient spouse contributes to the support of the third party. See Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985); Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983); Stuart v. Stuart, 385 So.2d 134 (Fla. 4th DCA 1980).
Other factors to consider in a changed circumstances determination are: the length of the marriage, the respective parties' contribution to the marriage, the earning capacities of both spouses (as well as the earning capacity of a new spouse or co-habitant of the paying spouse), and the property received at the time of dissolution. In addition, the "clean hands" doctrine can act to bar modification to a spouse who is delinquent with support payments. Blanton v. Blanton, 154 Fla. 750, 18 So.2d 902 (Fla. 1944); Pollock v. T & M Investments, Inc., 420 So.2d 99 (Fla. 3rd DCA 1982), petition for review denied, 430 So.2d 452 (Fla. 1983); Mayer v. Mayer, 373 So.2d 931 (Fla. 4th DCA 1979).
Application of the foregoing principles to the instant case indicates first, that the alimony provision which is the subject of this appeal was entered into in contemplation of the husband's retirement income. Second, the parties' agreement contained no provision for reduction of alimony if the wife resides with a nonrelated adult male. Third, the trial court's determination with regard to the wife's economic needs since commencement of her living arrangement with Mr. Perry is ambiguous.
The former wife argues the evidence reflects that the living arrangement was dictated in part by her need to accommodate the loss of income attendant upon leaving her job, and to alleviate the expense of maintaining a home for her children and grandchildren. She maintains that the record will not support a finding of change of circumstances, based upon a proper analysis of the law. According to the wife, the trial court merely considered the wife's unmarried cohabitation as conclusive evidence that her need for support had been reduced.
The former husband, on the other hand, contends that the trial court did consider the specific evidence and circumstances, and that his determination that the former wife's support needs had decreased was not based merely on the cohabitation factor. The former husband argues an interpretation of the evidence to coincide with that view.
Unfortunately, we are unable to determine from the order whether the trial court found the wife's current living arrangement *1146 to be conclusive evidence of reduced need. The findings of fact as set forth in the order reducing alimony are not phrased in sufficient detail to afford meaningful review. The factual findings in the order state:
1. The former wife has entered into a living arrangement with another man which this Court finds to be a de facto marriage.
2. As a result of this living arrangement a substantial change of circumstances has occurred in that the financial needs of the former wife have been reduced by virtue of the de facto marriage.
The first finding, that there was a "de facto marriage," is irrelevant. As we stated above, there is no legal status to be accorded that term. The second finding, that as a result of the living arrangement there has been a reduction in the former wife's financial needs, is ambiguous. We cannot tell whether the trial court determined that the living arrangement effected an automatic reduction in the former wife's needs, or whether the trial court made a determination of an actual reduction in the wife's financial needs.
A perusal of the record, with reference to the remaining criteria in a substantial change of circumstances context, establishes that this was a marriage of long duration. Furthermore, the record reflects the former husband's earning capacity is superior to that of the former wife. We note also that the husband's present wife is a licensed realtor, and her earning capacity may be considered in the context of a petition for reduction of alimony. Howard v. Howard, 130 So.2d 83 (Fla. 1st DCA), cert. denied, 133 So.2d 646 (Fla. 1961); Howard v. Howard, 118 So.2d 90 (Fla. 1st DCA), cert. denied, 122 So.2d 409 (Fla. 1960). Finally, the support provisions at issue in the instant case were part of an agreement entered into by the parties and incorporated into the final judgment.
Since we are unable to determine what factors were relied upon by the trial court in making the alimony reduction determination, this cause must be reversed and remanded for entry of an order containing findings of fact which explain the reasoning employed by the trial court in resolution of the modification issue. See Hartzell v. Hartzell, 434 So.2d 353, 355 (Fla. 4th DCA 1983).
Reversed and remanded for proceedings consistent with this opinion.
BARFIELD, J., concurs.
SMITH, J., specially concurs with opinion.
SMITH, Judge, specially concurring.
I would reverse on the ground that the husband failed to carry the burden of showing a change in financial circumstances sufficient to warrant a modification.
NOTES
[1] The record is silent regarding the wife's employment at any time during the marriage, and it appears the foodstore job was the wife's response to her need to supplement her income following the parties' separation. Neither party offered any evidence concerning the wife's earning capacity or skills.
[2] As part of the property settlement agreement, the wife was awarded one of the two homes owned by the parties. The wife is responsible for the $450 monthly mortgage payments on her home. The $350 rental represents the amount paid to the wife by the parties' adult son and daughter.
[3] Part of this expense included the increased cost of utilities and groceries which accompanied her daughter's return home with her children.
[4] The wife testified that she understood the husband's retirement income would be approximately $3,000 per month, and she asked for and was awarded 1/3 of that amount. According to the husband's testimony, his net income before retirement had been $3,968.50, and his post retirement income is $3,932.60, i.e., a decrease of only $36.00. Thus, the wife's alimony represents less than 1/3 of the husband's income.