512 So.2d 1142 (1987)
Alexander LOWRY, Appellant,
v.
Elizabeth R. LOWRY, Appellee.
Nos. 86-1637, 86-1850.
District Court of Appeal of Florida, Fifth District.
September 24, 1987.
Peter Cushing, Orlando, for appellant.
Sally D.M. Kest, Orlando, for appellee.
COBB, Judge.
Alexander Lowry petitioned for modification of his permanent alimony payments, which were predicated upon a settlement agreement. Prior to entering into the prejudgment agreement, Lowry was aware that his then wife was living with another man. The trial court denied the petition, and we affirm that ruling on the basis of estoppel  and also because the evidence adduced at the modification hearing failed to establish a de facto marriage between Elizabeth Lowry and her boyfriend.
On appeal the wife relies, quite naturally, upon the prior opinion of this court in Schneider v. Schneider, 467 So.2d 465 (Fla 5th DCA 1985). If the element of estoppel were not present and the evidence sufficient, the present majority in this case would seek an en banc reconsideration of *1143 Schneider for the reason that we do not believe it represents sound law in regard to the issue of termination of permanent[1] alimony where a subsequent de facto marriage of a former spouse is established at a modification hearing. As observed by the dissent in Schneider:
[W]e expect too much when we require a person to support an ex-spouse who has "married" another, legally or illegally... . Once cohabitation with a new partner is established, an ex-spouse may be legally compelled to continue paying support, but few will accept it even stoically as their duty.
467 So.2d at 468.
It is invidious and illogical for the law to discriminate against those who enter into de jure marriages and favor those who enter into de facto marriages instead. There may be a problem of proof in establishing a de facto marriage, but once such a "marriage" is established, it should have the same legal consequences in support matters as would a de jure marriage.
The appellant also challenges the trial court's award of attorney's fees to Elizabeth for the modification proceedings. We reverse this excessive award. We have repeatedly held that attorney fees should not be awarded where both parties are equally able to pay a reasonable fee. Bloodwell v. Bloodwell, 508 So.2d 771 (Fla. 5th DCA 1987); Mauldin v. Mauldin, 493 So.2d 1103 (Fla. 5th DCA 1986); Sizemore v. Sizemore, 487 So.2d 1080 (Fla. 5th DCA 1986); Ariko v. Ariko, 475 So.2d 1352 (Fla. 5th DCA 1985); Zulywitz v. Zulywitz, 473 So.2d 275 (Fla. 5th DCA 1985).
The former wife in this case did not have "meager resources" from which to pay her attorney for one modification hearing: She owned the former marital home valued at $67,000; a savings account of $47,000; a 1984 Buick and a 34-foot boat; and had a monthly income of approximately $1,000 from various sources. She is well able to pay a fee of $2,875, (which is some three times greater than the former husband's attorney received for the same hearing).
AFFIRMED in part; REVERSED in part; and REMANDED.
UPCHURCH, C.J., concurs.
SHARP, J., concurs specially with opinion.
SHARP, Judge, concurring specially.
The record established that Elizabeth and her companion entered into their live-in relationship prior to the dissolution, and the former husband was aware of it. At the time of the dissolution, the parties entered into a settlement agreement which set the amount of Elizabeth's support, and was incorporated into the final judgment. At that time, it was anticipated that the former wife would receive rental income of approximately $300.00 per month from the rental of a garage apartment and a cottage. However, she was never able to obtain this anticipated income due, in part, to the destruction of the apartment.
Further, the evidence established that Elizabeth's companion only contributed $300.00 per month towards household expenses, which did not exceed a fair amount to cover his own basic costs. This financial contribution, plus $35.00 per week Elizabeth receives from a boarder, roughly approximate the rental income the parties assumed Elizabeth would have at the time of the dissolution.
The presence of a live-in companion is relevant in a modification proceeding where financial contributions by the companion create a substantial change of circumstances. Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985); Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983); Sheffield v. Sheffield, 310 So.2d 410 (Fla. 3d DCA 1975), cert. denied, 328 So.2d 844 (Fla. 1976). Here, the financial contributions made by Elizabeth's companion do not constitute such a showing, and the trial court rightfully concluded Elizabeth has *1144 not experienced such a substantial change of circumstances as to warrant a downward modification of her support.
I disagree with the majority that estoppel is the only basis to affirm the trial court. Whether a former spouse has a boyfriend, girlfriend or de facto spouse is an issue which opens a pandora's box for speculation at trial, since neither term has any legal definition, nor (prior to this opinion) any legal significance. The law of Florida creates no legal rights or duties between live-ins. Why, then, should a duty (support) created by a lawful marriage be terminated by such a relationship? Must a divorced spouse remain forever celibate or stand to forfeit rights to alimony? The shoe which has not yet been dropped in Florida  palimony  may then have a reason to leap into being, were the family law of this state to be as stated by the majority. The critical factor in this case is that the live-in companion did not economically alter the former wife's situation regarding her level of support or financial status.
However, I question the trial court's award of $2,875.00 for attorney's fees in this proceeding. An award of attorney's fees is proper where one spouse has a superior financial ability to pay. Bridges v. Bridges, 506 So.2d 1047 (Fla. 4th DCA 1987); Bryan v. Bryan, 442 So.2d 362 (Fla. 1st DCA 1983), review denied, 450 So.2d 485 (Fla. 1984). Here the former husband can afford to pay such fees without invading his assets, whereas the former wife would be required to invade her assets to pay them. See Andrews v. Andrews, 409 So.2d 1135, 1138 (Fla. 2d DCA 1982) (error to award wife attorney fees if she can pay them without invading her assets). There is considerable disparity in their respective incomes and income-earning ability. I would therefore find that the award of the fee itself was proper.
However, the record here fails to establish the reasonableness of the amount awarded for the fees. In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), the supreme court held that in determining counsel fees, the trial court should follow the federal lodestar approach so that the parties are afforded an objective determination and a meaningful opportunity for appellate review. Rowe at 1152. The trial judge must make "specific findings" as to the reasonable number of hours expended and the reasonable hourly rate.[1]Rowe at 1151. Here, the trial court merely directed payment by the former husband, and it failed to set forth any specific findings upon which the award was based.
The affidavit by counsel for the former wife indicates she expended 28.7 hours on the modification proceeding, of which 5.5 hours were spent "conferencing" and 5.2 hours were devoted to research. The hourly fee appears to have been set at $100.00 per hour. I cannot determine whether the trial judge followed the lodestar approach and determined the reasonableness of the number of hours or hourly fee, since no specific findings were contained in the order. Since the lack of such findings required by Rowe preclude meaningful review, I would reverse the award and remand to the trial court for further evaluation and specific findings.
NOTES
[1] Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983), concerned rehabilitative alimony and is therefore distinguishable from Schneider and the instant case, which deal with permanent alimony.
[1] The trial judge must also determine the appropriateness of reduction or enhancement factors in setting a reasonable fee.