544 So.2d 1083 (1989)
Gloria LEE, Appellant,
v.
Charles Gordon LEE, Appellee.
No. 88-584.
District Court of Appeal of Florida, First District.
June 9, 1989.
*1084 Joseph R. Boyd, Joseph R. Boyd, Jr., and William H. Branch of Boyd & Branch, Tallahassee, Chriss Walker, Dept. of Health and Rehabilitative Services, for appellant.
Kurt Andrew Simpson, Jacksonville Beach, for appellee.
ZEHMER, Judge.
Gloria Lee, the former wife, appeals a final order that granted her former husband's motion to modify a final judgment of dissolution and terminated her rehabilitative alimony. For the reasons hereafter set forth, we reverse for insufficient findings of fact and record support to substantiate a change of conditions legally warranting termination of the rehabilitative alimony, and remand for further proceedings, including the taking of additional evidence if necessary.
The parties did not have the evidentiary hearing on this motion reported and thus have not provided us with a transcript of the evidence presented to the trial court. The sole record of the evidentiary hearing consists of the "Order Establishing Statement of the Evidence and Proceedings" entered by the trial court on motions by counsel for the parties pursuant to Rule 9.200(b)(4), Florida Rules of Appellate Procedure. The statement of the evidence in that order substantially follows the statement in appellant's rule 9.200 motion and reads in its entirety as follows:
This cause came on to be heard upon the objection of the former Husband to the statement presented by the former Wife in accordance with Rule 9.200(b)(3), Fla.R.App.P. [renumbered to 9.200(b)(4) in 1987]. The Court having heard argument of counsel and having duly considered the trial notes of the parties and of the Court, heby [sic] establishes the following as the Statement of Evidence to be considered by the appellate Court in this proceeding:
1. A final judgment of dissolution of marriage was entered on May 25, 1984.
2. Paragraph 10 of the final judgment awarded the former wife $300.00 per month as rehabilitative alimony for a period of five years (or 60 months). That alimony was, therefore, due to expire with the payment due May 1, 1989.
3. The former husband filed a motion to terminate alimony on August 19, 1987.
4. The former wife filed a motion for contempt for failure to pay child support on December 21, 1987. The amount of arrearage equalled the amount of alimony which became due from the date the former husband ceased making full payments until the date the motion was filed.
5. Trial of the issues was conducted on January 11, 1988. Both parties appeared and testified.
6. The basis of the former husband's motion was that the former wife had begun cohabiting with a man on or about June 29, 1987. That fact was admitted by the former wife. He further contended, and the Court finds, that the former Wife no longer had rental or utility payments and that the same were being provided by her boyfriend. This cohabitation equalled $450.00 as former residency expense and approximately $150.00 for utilities, including sewage, water, electricity, and phone. No monies were being charged to the former Wife by her boyfriend for these expenses, but she was providing money for groceries and all household items used for the household, including her boyfriend and his two children, who are reespectively [sic] 12 and 16 years of age.
7. The issue argued in the trial was whether there was a substantial change in circumstances from the time the alimony was ordered to the time of trial. Both parties were familiar with and argued the case based upon the principles expressed *1085 in DePoorter v. DePoorter, 509 So.2d 1141 (Fla.App. 1 Dist. 1987).
8. The parties introduced documentary evidence concerning their respective financial positions and testified.
9. The former husband relied on evidence that the former wife's boyfriend was contributing to the maintenance of her household, and that such contribution constituted a significant change sufficient to terminate alimony.
10. The former wife relied on the fact (as evidenced by her financial affidavit) that she was unable to maintain her household on her earnings plus the child support and alimony paid by the former husband, and that any economic effect of living with her boyfriend merely allowed her to maintain a home for herself and the children of the parties, not to enhance, her standard of living. Without the alimony, she argued, she would not be able to continue as before.
11. The Court ruled that the Former Wife should no longer receive temporary rehabilitative alimony.
The order granting modification made explicit findings that: "a) The former Wife has established a de facto marriage and has shared home and expenses with her live-in companion since June 1987," and "b) The de facto marriage has resulted in a substantial change in economic circumstances for the Former Wife. See Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983)." Accordingly, the court ordered the termination of the temporary rehabilitative alimony and ruled as moot the former wife's motion for contempt based on arrearages in alimony.
Section 61.14, Florida Statutes (1987), governs the modification of alimony orders. It recites that the section "is declaratory of existing public policy and of the laws of this state," and thus incorporates the decisional law of the courts not inconsistent with the statutory provisions. The statutory language expressly authorizes modification of an order awarding payments for alimony upon application by either party "for an order decreasing or increasing the amount of support, maintenance or alimony ... as equity requires, with due regard to the changed circumstances or the financial ability of the parties ... decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the ... order."
Rehabilitative alimony performs fundamentally different functions from permanent periodic alimony. While the latter is predicated solely upon the need for support, rehabilitative alimony may or may not involve support as its principal purpose. The fundamental purposes distinguishing permanent periodic alimony from rehabilitative alimony are described by the supreme court in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980):
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates... .
As a general rule, permanent periodic alimony is terminated upon the death of either spouse or the remarriage of the receiving spouse.
382 So.2d at 1201-02. Rehabilitative alimony is to be distinguished from permanent periodic alimony in that:
The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills.
382 So.2d at 1202. "Rehabilitative alimony automatically terminates by expiration of the period fixed in the final judgment or by such subsequent order as may modify the period" and "presupposes the capacity for self-support." Cann v. Cann, 334 So.2d 325, *1086 329 (Fla. 1st DCA 1976). Rehabilitative alimony, by definition of purpose, contemplates an improvement in the economic condition of the recipient during or at least by the end of the prescribed period, and in that sense presupposes that the receiving spouse will experience a change in circumstances. Rehabilitative alimony can be modified or terminated in accordance with the provisions of section 61.14, Florida Statutes (1987). Maas v. Maas, 438 So.2d 1068 (Fla. 2d DCA 1983); Wolfe v. Wolfe, 424 So.2d 32 (Fla. 4th DCA 1983); Veach v. Veach, 407 So.2d 308 (Fla. 4th DCA 1981). Such alimony may or may not be terminated or modified upon remarriage of the receiving spouse, depending upon the purpose for which the rehabilitative alimony was originally awarded and the express provisions for termination in the original order awarding alimony. See e.g. Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983); Maas v. Maas, 438 So.2d 1068; Kissinger v. Mason, 436 So.2d 1049 (Fla. 1st DCA 1983); Frye v. Frye, 385 So.2d 1383 (Fla. 2d DCA 1980). Cf. Blackmon v. Blackmon, 307 So.2d 887 (Fla. 3d DCA 1975). Considering a motion for termination or modification of rehabilitative alimony under section 61.14 where the original award did not specify termination thereof upon remarriage, the court in Frye said:
However, since rehabilitative alimony is paid for a specific purpose not necessarily related to the recipient spouse's remarriage, it would seem to follow that it should not necessarily be terminated upon remarriage. True, rehabilitative alimony does serve a support function and is usually awarded instead of permanent alimony. Nonetheless, the ultimate purpose of rehabilitative alimony is rehabilitation, and the question upon the recipient's remarriage should be whether that event alone has served the rehabilitative purpose.
385 So.2d at 1389-90.
Manifestly, in determining whether there has been a material change of circumstances sufficient to warrant modification of the rehabilitative alimony award, the court must first determine the purpose of such alimony, including the amount, if any, intended for support. That has not been done by the trial court so far as we can tell from the face of the order or the record before us, and we are unable to make such determination upon this review. It appears from the appealed order that the evidence before the trial court proved simply that appellant established a de facto marriage with a new partner in a relationship that involved mutual support for each other, and that the new support relationship amounted to a "substantial change in economic circumstances" within the meaning of the decision in Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983), warranting termination of rehabilitative alimony.
The trial court does not define the meaning of the term "de facto marriage" as used in its order.[1] As we read the order, however, the trial court obviously used the term in the same sense as the cohabitation arrangement involved in Bentzoni v. Bentzoni, supra, a case that involved an application for termination of rehabilitative alimony. In that case the circumstances of the relationship were held to be "tantamount to a marriage," so the court treated "the recipient spouse's entitlement to a continuation of the rehabilitative alimony award as though she had remarried." 442 So.2d at 236-37. But the trial court below, *1087 as the trial court in Bentzoni, did not expressly address the legal effect appellant's remarriage, whether or not legally solemnized, would have on her right to continue receiving the rehabilitative alimony under the terms of the original award. The court below made no explicit ruling on whether appellant's new relationship affected, diminished, or satisfied the purposes of the rehabilitative alimony ordered in the final judgment. Nor was there any finding of the extent that the rehabilitative alimony award was intended to provide support and the effect of appellant's new relationship thereon. Thus, the court below failed to comply with the requirements set down in Bentzoni and, just as the appellate court did in that case, we find it necessary to reverse and "remand the case to the trial court for further proceedings, specifically, to determine if the intended rehabilitation has occurred, and if not, to determine the extent to which the rehabilitative alimony award represents support of the former wife" because, "if the wife now derives support from another source, that portion of the rehabilitative alimony award should be terminated." 442 So.2d at 238.
Both parties apparently relied heavily upon our decision in DePoorter v. DePoorter, 509 So.2d 1141, in arguing the case below. Although that case involved permanent periodic alimony and not rehabilitative alimony, the several criteria described therein are applicable in determining a substantial change in circumstances to the extent the rehabilitative alimony is provided for purposes of support; but that case is not applicable in determining such change in respect to any other special purpose of the rehabilitative alimony.
Additionally, on remand the court below should determine the extent to which the rehabilitative alimony paid to appellant for her support is being used for the support of her de facto husband and his children, because "to the extent that the ... alimony is being used to support a new partner, the alimony payment should be deemed to be excessive." Schneider v. Schneider, 467 So.2d 465, 467 (Fla. 5th DCA 1985). It is essential that these facts be determined by the trial court because this court seems to be aligned with the other Florida district courts of appeal which have held that rehabilitative alimony may continue in some circumstances even after remarriage of the recipient spouse. See Bentzoni, 442 So.2d at 236; Kissinger v. Mason, 436 So.2d 1049 (Fla. 1st DCA 1983). Cf. Cann v. Cann, 334 So.2d 325, 329 (Fla. 1st DCA 1976).
Appellant admits she is now contributing to the support of her new mate and his two children to some extent, but the monetary value or extent of that support is not reflected in the record. The extent of such support is a fact that must be ascertained and considered in terminating, reducing, or confirming the amount of the rehabilitative alimony under section 61.14 and Schneider v. Schneider, supra. There is no statutory provision or case authority for the proposition that the changed circumstances under section 61.14 require as a predicate to modification a showing that the cohabitation relationship with the new mate, or de facto husband, has resulted in a net economic gain to the recipient spouse. The change of circumstances required by that section may be established either by showing that the recipient spouse is receiving some support from the new cohabiting partner that lessens her need, Bentzoni, or that the recipient spouse is diverting some of the support alimony to the new cohabiting partner, Schneider.
Although we hold that the appealed order cannot stand, we do not reverse with directions to deny the motion for modification because the record before us is not adequate for that purpose. The sole record of the evidentiary hearing consists of the "Order Establishing Statement of the Evidence and Proceedings" quoted above at pages 1084 and 1085. Although we have found no Florida precedent addressing the sufficiency of a substituted statement of the evidence under rule 9.200(b)(4), we conclude that the statement on this appeal does not comply with the rule sufficiently to permit outright reversal based on the lack of evidence to support the trial court's order. The statement does not undertake to summarize the substance of the testimony given by each witness, but is couched *1088 only in terms of inferences and conclusions of ultimate fact made by the parties and the court. We are not apprised of the testimony respecting the documents referred to. Rule 9.200(b)(4) is intended to require the parties to supply the appellate court with a complete summary of the substance of the testimony given by each witness in sufficient detail to enable the appellate court to determine whether such testimony supports these inferences and conclusions, as well as the findings of fact necessarily relied upon by the trial judge in reaching a decision.
Nor do we determine, without reviewing the substance of each witness's testimony, that the evidence actually adduced wholly fails to establish a change of circumstances within the meaning of section 61.14. So long as the party moving for termination of rehabilitative alimony presents some evidence of changed circumstances in addition to the alleged fact of remarriage, i.e., the so-called de facto marriage, "the burden of proof of continued need should shift to the recipient spouse since the evidence as to the recipient spouse's economic circumstances or those of the newly acquired spouse is peculiarly within his or her knowledge and may not be readily available to the payor spouse." Maas v. Maas, 438 So.2d at 1070, quoting from Frye v. Frye, 385 So.2d at 1090. The appealed order expressly recites that appellant "has shared home and expenses with her live-in companion since June 1987," but fails to ascertain the amount. Since, as previously stated, the trial court's finding of a "de facto marriage" in this case should be accepted as meaning the parties are living as if appellant had remarried, this proof and finding by the trial court is legally sufficient to shift the burden of proof on these issues to appellant. In view of the presumption of correctness that we must accord the lower court's order and the lack of specificity in the statement of evidence before this court regarding the testimony presented, we conclude that reversal with directions to deny the former husband any relief based on a perceived insufficiency of the evidence to support the trial court's order would be contrary to Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979). See also, Clayton v. Clayton, 442 So.2d 310, 311-12 (Fla. 1st DCA 1983) (Zehmer, J., specially concurring); Starks v. Starks, 423 So.2d 452 (Fla. 1st DCA 1982).
We feel compelled to comment upon an underlying social and public policy problem that inheres in the resolution of the issues raised in this case. The Florida district courts of appeal have given tacit, if not express, approval to the continuation of support alimony even though the recipient spouse has established a meretricious relationship involving cohabitation as man and wife without the solemnization required to make it a legal marriage. This situation presents serious public policy issues, as Judge Upchurch pointed out in his dissent in Schneider, wherein he questioned the wisdom of accepting "the modern practice of persons of the opposite sex living together outside of wedlock," and observed that, "Once cohabitation with a new partner is established, an ex-spouse may be legally compelled to continue paying support, but few will accept it even stoically as their duty." 467 So.2d at 468. He then astutely concluded:
The receipt of alimony, especially when the amount is substantial, obviously acts as a deterrent to remarriage. If the consequences of its loss can be avoided by the simple expedient of avoiding solemnization of the new relationship, it can be realistically predicated that many will forego formal marriage, thereby continuing the obligation of their former spouse and the companionship of their new "companion," while subject to no sanction by a progressively tolerant society.
I concede that the problem of proof in establishing a de facto marriage may be severe, but that is not an issue here. As a matter of public policy, I do not think persons who legitimize their relationships should be penalized, while persons who do not are not.
467 So.2d at 468. We concur in these observations, although we are aware that apparently a majority of jurisdictions in this country, including the appellate decisions in *1089 this state, have rejected this argument and disapproved the notion of outright termination of support alimony upon establishment of a so-called "de facto marriage." See generally, Keith and Nelson, Cohabitation: New Views on a New Lifestyle, 6 Fla.St.L.Rev. 1393 (1978); Langbein, Post-Dissolution Cohabitation: "The Best of Both Worlds", 57 Fla. Bar J. 656 (Nov. 1983). Yet, where the evidence convinces a trial court that the parties are cohabiting in a manner tantamount to actual marriage, lacking only solemnization by license and ceremony, no doubt such persons are doing so in a manner that for all intents and purposes would place their conduct in violation of section 798.01, Florida Statutes (1987). That section makes it a criminal offense for couples to live "in an open state of adultery" and has been in the statutes of this state for well over a century.[2] For a court of equity to countenance such a meretricious relationship and continue to enforce an award of equitable benefits to a party to such relationship is incongruous, to say the least, as long as this criminal statute remains on the books. We point out this incongruity primarily to identify the need for specific legislation directly addressing the treatment of alimony payments to recipient spouses living in a state of unsolemnized marriage.
The appealed order is reversed and the cause is remanded with directions to make specific findings of fact on the elements essential to termination of rehabilitative alimony. See, e.g., Eisner v. Eisner, 513 So.2d 673 (Fla. 1st DCA 1987); DePoorter v. DePoorter, 509 So.2d 1141. In view of the lack of a meaningful record preserving the testimony at the prior hearing, the trial court may receive further evidence as deemed necessary.
REVERSED AND REMANDED.
ERVIN, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting.
Because rehabilitative alimony of $300 monthly was awarded in this case for a prescribed period without other stated conditions, and because the material factual findings in the record (prepared in accordance with Fla.R.App.P. 9.200(b)(4)) relate solely to the economic circumstances of appellant's obtaining rent and utilities payment in exchange for assuming grocery costs for three persons, the order on appeal is clearly one which recognizes that the award served a support function. The parties are to be commended for having complied with the appellate rules governing submission of a stipulated record approved by the trial court. However, the trial court's conclusion of "substantial change in economic circumstances" affecting the need for the original award is not supported by the recited evidence in the stipulation, in the record context of the initial award to a former wife who had multiple minor children and no training or employment during the 17-year marriage. I am unable to find a rational basis for remand for new findings and would therefore reverse, subject of course to such renewed motions for modification as may be filed under the statute.
NOTES
[1] We noted in DePoorter v. DePoorter, 509 So.2d 1141 (Fla. 1st DCA 1987), that "Florida jurisprudence does not accord legal status to the concept of de facto marriage." Id. at 1144. Thus, the term is not a legal word of art and its meaning is not self-evident. The term is defined in Black's Law Dictionary (5th Ed. 1979) as meaning, "A marriage in which the parties live together as husband and wife under color of validity but which is defective for reasons of form, etc." It might be assumed from this definition and the context in which the term has been used in various Florida decisions that the term involves cohabitation in a manner similar to that formerly required to establish a common law marriage in the absence of direct proof of an explicit marriage agreement. See 25 Fla. Jur.2d, Family Law, §§ 29-31, 60-64 (1981) Of course, common law marriages were abolished by statute effective January 1, 1968. § 741.211, Fla. Stat. (1987).
[2] The statutory language has remained largely unchanged throughout the years and has been consistently construed to require "the State to show that the parties lived together openly as if the relation of husband and wife existed. A mere occasional illicit intercourse is not sufficient to meet the requirements of the statute, but it must be shown that there was a living or residing together openly, as if the conjugal relation existed." Watson v. State, 142 Fla. 218, 194 So. 640, 641 (1940).