385 So.2d 1383 (1980)
Larry Haynie FRYE, Appellant,
v.
Linda Ann FRYE, Appellee.
No. 79-2233.
District Court of Appeal of Florida, Second District.
July 23, 1980.
*1384 George M. Osborne of Osborne & Ciarciaglino, St. Petersburg, for appellant.
Larry G. Rightmyer, St. Petersburg, for appellee.
CAMPBELL, Judge.
In this case, we deal for the first time in this district with the question of whether a court must terminate rehabilitative alimony upon the remarriage of the spouse receiving that alimony.
Larry and Linda Frye were married on August 30, 1975, and separated less than three years later. As part of the dissolution proceedings, the Fryes entered into an agreement entitled "Separation and Property Settlement Agreement" in which they made provisions for the custody, visitation, and support of their minor child as well as for her medical and dental expenses and college education. The agreement also provided for payment of $1,500 lump sum alimony and $900 attorney's fees to Mrs. Frye, and made disposition of the couple's automobiles and furniture. Finally, it called for the payment to Mrs. Frye of the amount of $20 per week for a period of 52 weeks and was specifically designated as "rehabilitative alimony". The agreement was silent as to the effect of the remarriage of Mrs. Frye during that 52 week period.
The court entered a final judgment dissolving the marriage in which it incorporated the provisions of the Fryes' agreement. Approximately three months later Mrs. Frye remarried. Thereupon, Mr. Frye, on the advice of his attorney, discontinued payment of rehabilitative alimony. Mrs. Frye then filed a motion asking the court to declare Mr. Frye in contempt or, in the alternative, to compel his compliance with the final judgment. Mr. Frye responded by filing a petition for modification of the rehabilitative alimony alleging only the remarriage of Mrs. Frye as support for the modification. After a hearing on these motions at which no evidence was offered, the court entered an order in which it directed Mr. Frye to make all of the rehabilitative alimony payments required by the property settlement agreement. Mr. Frye then instituted this appeal.
The court refused to modify the rehabilitative alimony provision primarily because it originated as part of a property settlement agreement, relying on Vance v. Vance, 143 Fla. 513, 197 So. 128 (1940). In order, then, to determine the correctness of the trial court's ruling, we will first determine whether it depends on a reliance on the Vance case.
In Vance, the husband and wife entered into a property settlement agreement whereby the husband was to pay the wife $100 per month for six years and keep current a life insurance policy for her benefit. The payments were not designated as "alimony" payments. The wife, in turn, promised not to pledge the husband's credit and, in the event of a divorce, not to claim dower or any other interest in the husband's estate. They both agreed to divide between them their personal property which they had acquired during the marriage. Subsequently, they divorced, and the court incorporated the settlement agreement into its final decree. The wife then remarried and the husband sought to end the monthly payments of $100. The trial court granted the husband's motion, thereby ending the payments. The supreme court reversed and said:

*1385 When there is no property settlement or other impediment in the way, the remarriage of a divorced wife will generally relieve the former husband from the payment of alimony but where a property settlement was in good faith entered into by the parties and it is shown that it was intended as a release of all claims of each against the other, including that for alimony and one or both the parties have acted in reliance on the provisions of the property settlement, it should not be disturbed merely because one of the parties remarried.
143 Fla. at 517, 197 So. at 130.
While Vance appears to be much like the present case because both involve payments to be made over a specified period of time, it may be distinguished. Cases subsequent to Vance which have dealt with the modification of the terms of agreements entered into at the time of divorce usually hold that only those portions of such agreements which are in the nature of property settlements are not modifiable and that provisions in such agreements which are true alimony provisions, even though not designated as such, are subject to modification as they would be had they not been part of an agreement but rather ordered by the court. See Fort v. Fort, 90 So.2d 313 (Fla. 1956); Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Friedman v. Friedman, 366 So.2d 820 (Fla. 3d DCA 1979); Ohmes v. Ohmes, 200 So.2d 849 (Fla. 2d DCA 1967).
Here, however, except for losing the right to make further claims against her husband by virtue of a mutual release clause contained therein, it cannot truly be said that Mrs. Frye gave up anything as a result of signing this agreement. Though the award in this case looks much like the contested provision in Vance, there the court treated the periodic payments as part of an overall property settlement and not as alimony and, therefore, not subject to modification. Here, however, it must be said that the periodic payments were, in fact, exactly what they were labeled, "rehabilitative alimony". It should be noted, however, that at the time the supreme court decided Vance the concept of "rehabilitative alimony" was not in existence.
If, then, we feel we cannot appropriately apply Vance to the facts here, we must determine if the trial court's denial of the husband's petition can otherwise be sustained. Mr. Frye's petition alleged that his wife had remarried and that she no longer needed rehabilitative alimony, and further that in the event she did need further rehabilitation, such rehabilitation should be the responsibility of her new husband. However, no evidence of Mrs. Frye's need was presented. On appeal, Mr. Frye refers us to cases which hold that the recipient's remarriage terminates the payor's obligation to pay. Although those cases involved permanent periodic alimony, Mr. Frye argues that they should control here since there is no substantial distinction between permanent and rehabilitative alimony.
We do not agree that there is no substantial distinction between the types of periodic alimony. Rather, there appears to be a sufficient distinction in terms of philosophy and purpose to warrant a holding that the well-established rule requiring termination of permanent periodic alimony upon the recipient's remarriage does not necessarily compel the same result when the periodic alimony is rehabilitative in nature.
Initially, it must be noted that all of the cases out of the Florida Supreme Court on this subject have dealt with termination, upon the recipient's remarriage, of alimony in general  not with the specific type of alimony involved here. Moreover, those cases do not seem to set out a hard and fast rule requiring termination in all cases. And finally, all but one of those cases were decided prior to the advent of the concept of rehabilitative alimony. Six supreme court cases have touched on the question. Carlton v. Carlton, 87 Fla. 460, 100 So. 745 (1924); Vance v. Vance, 143 Fla. 513, 197 So. 128 (1940); Friedman v. Schneider, 52 So.2d 420 (Fla. 1951); Chaachou v. Chaachou, 135 So.2d 206 (Fla. 1961); In re Estate of Freeland, 182 So.2d 425 (Fla. 1965); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). However, only Carlton and Friedman *1386 can be said to have directly confronted the issue of termination of alimony upon the recipient spouse's remarriage, but as in the other cases permanent alimony was involved.
Carlton is generally regarded as the seminal case, and although the court stated that the divorced wife was not entitled to alimony or maintenance and support because she had remarried, that rule was enunciated in almost a factual vacuum. The facts which were recited, however, distinguish it from the instant case: The concept of rehabilitative alimony did not exist at that time, and the wife had remarried between the time the chancellor had refused to award alimony and the time he again considered the question after the supreme court, in Carlton v. Carlton, 78 Fla. 252, 83 So. 87 (1919), had reversed his initial refusal.[1] We question the applicability of that case, decided fifty-six years ago, to the case sub judice.
In Friedman v. Schneider, the husband was ordered to pay an unallocated sum of $375 a month for both child support and alimony. The wife remarried three years later and the husband ceased payments. Citing Carlton, the court held that "[w]here the periodic payments represent only the amounts the court decides are necessary to afford shelter, food, and clothing ... for the quondam wife, her marriage to another ends the obligation." 52 So.2d at 421 (Emphasis added.) The court emphasized that "[t]he moneys to be paid by [the husband] seem only to have been ordered for the purpose of furnishing livelihood for the woman and child." Id. As will be seen, that purpose significantly distinguishes the alimony involved in Friedman from rehabilitative alimony. Moreover, the court in that case mentioned the existence of a prior agreement which had provided for termination of alimony upon the wife's remarriage. The rehabilitative alimony provision of the agreement involved in the instant case made no mention of the effect of remarriage.
All of the other supreme court cases expressed the termination rule in dicta. In Vance v. Vance, for example, the issue was whether an agreement between the parties was for alimony or for the settlement of property. (In holding that the agreement was one for the settlement of property and, thus, not modifiable, the court seemed to recede from its unequivocal rule in Carlton by stating that a wife's remarriage will "generally" relieve her former husband from his obligation to pay alimony.) And in Freeland, the wife sought to obligate her ex-husband's estate to continue paying periodic permanent alimony.
The most recent pronouncement of the supreme court was in Canakaris, which we feel did not conclusively resolve the issue here. Discussing permanent periodic alimony, the court stated that it is "most commonly used to provide support," and is terminable as a general rule upon the recipient spouse's remarriage. 382 So.2d at 1202. The court then contrasted rehabilitative alimony  "to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision for the training necessary to develop potential supportive skills"  without stating that this type of alimony terminates upon remarriage. Id. The confusion arises from a later statement of the court in its discussion of a trial judge's discretion to apportion assets, that "[w]here a trial judge fails to apply the correct legal rule, as when he refuses to terminate periodic alimony upon remarriage of the receiving spouse, the action is erroneous as a *1387 matter of law." Id. (First emphasis added.) "Periodic" is a term that describes a method of payment and, therefore, could refer to both permanent and rehabilitative alimony. If the reference to "periodic alimony" in the last quoted statement is meant to include both types of periodic alimony, then the court appears to be considerably expanding its earlier statement that permanent periodic alimony is terminable as a general rule upon the recipient's remarriage. We must assume that the court did not necessarily intend the language emphasized above to so broaden its earlier statement as to signal to trial judges that they would also err as a matter of law if they refused to terminate periodic rehabilitative alimony upon the recipient's remarriage. This is especially true in light of the fact that the court's opinion was primarily concerned with permanent and lump sum alimony, and only briefly mentioned rehabilitative alimony. We believe the court was using periodic in the latter instance for the sole purpose of contrasting its earlier statement concerning termination of permanent periodic alimony with the rule concerning lump sum alimony, which is a vested property right. At any rate, since that statement appeared as dicta in the court's discussion of a trial judge's discretion, interpretation of what the court meant is purely speculative. Therefore, we do not believe that our highest court has unequivocally held that periodic payments of rehabilitative alimony are automatically terminable, without consideration of surrounding facts and circumstances, upon the recipient spouse's remarriage.
However, those of our sister courts which have considered the issue have held that termination is automatic. Richter v. Richter, 344 So.2d 889 (Fla. 4th DCA 1977); Blackmon v. Blackmon, 307 So.2d 887 (Fla. 3d DCA 1974). In the latter case, the trial court had awarded to the wife as rehabilitative alimony the lump sum of $30,000 to be paid in equal monthly installments. When the wife remarried, the husband petitioned for modification. The trial judge denied the petition, stating that he had intended to and did in fact award lump sum alimony, and that the award had vested upon entry of the final judgment. The district court reversed, holding that rehabilitative, not lump sum alimony, had been awarded, and that such alimony was terminable upon the wife's remarriage. The court's opinion strongly implied that the trial court may order either rehabilitative or lump sum alimony, but not rehabilitative alimony payable in a lump sum, a position with which we cannot agree.[2] Chief Judge Barkdull's dissenting opinion also expressed disagreement:
The trial judge, at the time of the dissolution of the marriage, had the authority to award lump sum rehabilitative alimony. See: Kennedy v. Kennedy, Fla. 1974, 303 So.2d 629 (1974); McRee v. McRee, Fla. App. 1972, 267 So.2d 21. He had jurisdiction to entertain the motion to modify per the authorities in the majority opinion; this he declined to do, holding that in his original final judgment of dissolution he intended lump sum rehabilitative alimony.
307 So.2d at 889.
In Richter, no facts were recited in the majority opinion. Citing Blackmon, the majority merely held "that the trial court improperly ordered that the rehabilitative alimony award to the wife continue regardless of her remarriage." 344 So.2d at 890. However, in light of the concurring opinion of Judge Dauksch, it must be assumed that there were surrounding facts and circumstances *1388 which justified the result. We strongly agree with Judge Dauksch's opinion and set it out in full:
I understand rehabilitative alimony to be meant to assist the recipient in making a life for herself when the support from her former husband is no longer available or necessary. It is the impetus to shake prior reliances and live free. Without the statutory availability of rehabilitative alimony the court might have awarded lump sum alimony payable in installments or permanent periodic alimony to accomplish the same purpose. But these types of awards are too speculative and have the onerous ring of unnecessary support, in some cases. Rehabilitative alimony is a bit speculative but is usually awarded for a purpose, for example, to obtain an education, a certificate or some retraining in a former occupation. The amount needed is more easily determined but it is not an absolute, in most instances. Therefore the court should not absolutely have said rehabilitative alimony shall continue regardless of remarriage. Very possibly the remarriage might accomplish the rehabilitation in that the former wife has established herself in the occupation of housewife and receives her income and support from that source. On the other hand, a remarriage may not demonstrate the absolute rehabilitation of the wife. The days when women married for support have passed and the roles of the partners to a marriage are not stereotyped but vary from family to family. Thus for this court to determine that rehabilitation occurs or doesn't occur upon remarriage is not grounded on reason. The provision that rehabilitative alimony would continue regardless of remarriage should be amended to read may continue regardless of remarriage in order to give to the parties an opportunity to "show cause" if remarriage occurs. I agree with the result in the majority opinion but resist the implication therein that rehabilitative alimony must always cease upon remarriage. But see dictum in Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976).
Richter v. Richter, 344 So.2d at 890. The only other statement of a district court of appeal concerning termination of rehabilitative alimony was dicta in Cann v. Cann, 334 So.2d 325, 329 (Fla. 1st DCA 1976): "Remarriage of the recipient also, of course, requires termination of rehabilitative alimony."[3]
The entire concept of alimony has undergone rather radical changes in the past ten years. Until those changes began to evolve, alimony was defined in Florida "[as] money required to be paid by a man to his former wife for her subsistence, [and it] derives from the legal duty to support her which he assumed when they married." Friedman v. Schneider, supra, at 421; Reese v. Reese, 178 So.2d 913, 915-16 (Fla. 3d DCA 1965), rev'd on other grounds, 192 So.2d 1 (Fla. 1966). That definition was supported by Section 61.08, Florida Statutes (1969), and its predecessor statutes, which provided for alimony to the wife only. That concept was abandoned by the legislature in 1971 when it amended Section 61.08 to provide for alimony "to either party" to do equity and justice between the parties.
The concept of rehabilitative alimony is also a recent phenomenon of the same vintage and was provided to serve purposes distinct from those to be served by permanent alimony, although there may be some overlap in terms of "support". The term "rehabilitative alimony", when first authorized by Section 61.08(1) in 1971, appeared in the provision that "the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic or payments in lump sum or both." However, it was left to the courts to determine what the term "rehabilitative" embraces and when such alimony should be awarded. The most appropriate definition of rehabilitative alimony was set out in *1389 Reback v. Reback, 296 So.2d 541, 543 (Fla. 3d DCA 1974):
The dictionary definition of the word "rehabilitate" is to "restore to a former capacity... to put on a proper basis or into a previous good state again". This word, when applied descriptively to alimony to wife a husband or wife may be entitled, assumes necessarily either a previous potential or actual capacity for self-support in the person seeking alimony which has been undeveloped or completely lost during the marriage. The ordinary definition indicates that "rehabilitative" alimony is appropriate in those situations where it is possible for the person to develop anew of [sic] redevelop a capacity for self-support, and should be limited in amount and duration to what is necessary to maintain that person through his training or education, or until he or she obtains employment or otherwise becomes self-supporting.
Accord, Canakaris v. Canakaris, supra. See also Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979); Jassy v. Jassy, 347 So.2d 478 (Fla. 2d DCA 1977); Lee v. Lee, 309 So.2d 26 (Fla. 2d DCA 1975); Mertz v. Mertz, 287 So.2d 691 (Fla. 2d DCA 1973). The following statement from the trial judge's order in the instant case reflects the rationale for rehabilitative alimony enunciated by Judge Dauksch in Richter, quoted above: "The presumption that marriage in and of itself meets the economic needs of women no longer has a foundation in fact. Few women can now afford the luxury of not working. To penalize the petitioner for her remarriage appears to this Court to be manifestly unfair."
In short, the purpose of rehabilitative alimony is to restore to a spouse who, because of the marriage, was either prevented from becoming or chose not to become self-supporting, those skills which would enable her or him to support herself or himself. This is, of course, an advantage to the payor spouse; but should it turn out that rehabilitation is impossible, the recipient spouse can still petition the court for a change to permanent alimony. Moreover, rehabilitative alimony serves society's and the recipient spouse's interests by encouraging that spouse to become self-supporting. Finally, the fact that rehabilitative alimony may be awarded in addition to permanent or lump sum alimony, or both, Canakaris v. Canakaris, supra; Cann v. Cann, supra; Section 61.08(1), Fla. Stat. (1977), further suggests that permanent and rehabilitative alimony serve distinctly separate purposes.[4]
Permanent alimony, which is modifiable upon a showing of changed circumstances, reflects society's belief that the spouse with the means to pay has a duty to provide the needy spouse with at least the basic necessities of life. This duty arises out of the marital relationship and is in part moral and in part society's desire to avoid having the needy spouse become a public charge. Once the needy spouse has remarried, the other spouse's moral duty ceases and society's fears are supposedly allayed. It may, therefore, be proper to relieve the payor spouse of the obligation of support on the premise that the obligation has been assumed by another.
However, since rehabilitative alimony is paid for a specific purpose not necessarily related to the recipient spouse's remarriage, it would seem to follow that it should not necessarily be terminated upon remarriage. True, rehabilitative alimony does serve a support function and is usually awarded instead of permanent alimony. In this particular case, for example, the wife was awarded lump sum alimony and rehabilitative alimony, but no permanent alimony. Nonetheless, the ultimate purpose of rehabilitative alimony is rehabilitation, and the *1390 question upon the recipient's remarriage should be whether that event alone has served the rehabilitative purpose. We can conceive of a situation where a former spouse who is receiving rehabilitative alimony and who is in fact in the process of accomplishing that rehabilitation within the time frame provided, takes a new spouse who has little or no means or ability to provide any financial support to the new marriage.[5] Where rehabilitative alimony has been awarded, as required by Section 61.08, "to do equity and justice between the parties," it does not seem to us that the statute intends that a trial court, when faced with this hypothetical situation, must then turn around and terminate the award merely because the receiving spouse has remarried within the time frame initially deemed necessary for the spouse's rehabilitation.
Therefore, when the husband here pled and proved nothing showing an altered need of the wife other than the mere fact of her remarriage, the trial court's refusal to modify on that fact alone should be affirmed. However, this opinion does not preclude a spouse who is paying rehabilitative alimony from pleading and proving that a remarriage or other changed circumstances of the recipient spouse has eliminated or altered the need for further rehabilitative alimony. Once any such evidence other than the mere remarriage has been presented, the burden of proof of continued need should shift to the recipient spouse since the evidence as to the recipient spouse's economic circumstances or those of the newly acquired spouse is peculiarly within his or her knowledge and may not be readily available to the payor spouse.
The order of the trial court is accordingly AFFIRMED.
BOARDMAN, Acting C.J., concurs.
GRIMES, J., dissents with opinion.
GRIMES, Judge, dissenting.
I agree with the inapplicability of Vance v. Vance to this case. Since the concept of rehabilitative alimony had not been developed at the time of Vance, it was inevitable that the supreme court would treat the provision calling for payments of $100 per month for six years as an unmodifiable property award rather than a form of periodic alimony.
However, I must depart from Judge Campbell's conclusion that remarriage will not terminate rehabilitative alimony in the absence of a showing of a change of economic circumstances. The law of Florida has always been that permanent alimony automatically terminates upon remarriage of the recipient spouse. I can see no meaningful distinction between permanent and rehabilitative alimony which would require a different result when the remarriage of the spouse receiving the alimony occurs. The arguments advanced by Judge Campbell to support the contention that rehabilitative alimony should not automatically terminate upon remarriage would appear to be equally applicable to permanent alimony. Until the rule with respect to permanent alimony is changed, I believe that rehabilitative alimony automatically terminates upon the remarriage of the recipient spouse. At least two of our sister courts hold the same belief, and the supreme court said as much in Canakaris.
I respectfully dissent.
NOTES
[1] Because of this latter fact, Carlton is similar to Claughton v. Claughton, 361 So.2d 752 (Fla. 3d DCA 1978), and Seale v. Seale, 350 So.2d 96 (Fla. 1st DCA 1977), which addressed the issue of whether a court can initially deal with the question of alimony where the wife has remarried after a final judgment reserving jurisdiction to determine alimony but before that determination has been made. It is noteworthy that each court interpreted Carlton differently and arrived at opposite conclusions. Seale concluded that Carlton applied only to periodic alimony and did not preclude an initial award of lump sum alimony after the remarriage. Claughton, however, interpreted Carlton as applying to all "alimony", including lump sum. The disagreement reflects the difficulty which the courts have had in dealing with the types and manner of payment of alimony. See also note 4 infra.
[2] In a case subsequently decided by that court, Claughton v. Claughton, supra note 1, the court reiterated the well-established rule regarding the vesting of lump sum alimony awards, but asserted in a footnote that an exception existed if a lump sum award is for rehabilitation and is payable in installments. In such a case, it was claimed that further installments would not be due after the recipient's remarriage. Although this implies that it is proper to award rehabilitative alimony in a lump sum payable in installments, the court cited Blackmon, which, as indicated, did not so hold. Regardless of these inconsistencies, however, it is clear that our sister court is hostile to the idea of requiring a husband to continue paying rehabilitative alimony to his former wife after her remarriage.
[3] It is also interesting to note that the court stated that "[l]ump sum alimony is justified only where it serves a reasonable purpose, such as rehabilitation... . 334 So.2d at 328. See note 2 supra.
[4] Permanent or rehabilitative alimony may be payable periodically or in a lump sum. See § 61.08, Fla. Stat. (1977). Payment of either type of alimony in a lump sum should not be confused with "lump sum" alimony as that term was used in Canakaris. There, the court was referring to a type of alimony (not a method of payment) which may be awarded "to ensure an equitable distribution of property acquired during the marriage... ." 382 So.2d at 1201. This type of alimony is not provided for in § 61.08, but has been judicially created.
[5] As the trial judge suggested in the instant case, the old adage that two can live as cheaply as one is no longer necessarily true. Moreover, where the recipient spouse enters the new alliance with minor children, the "two" may be "four" or more, and they certainly cannot live as cheaply as one. Granted, the recipient spouse may also be receiving child support. But since child support is also based on the payor spouse's ability to pay, there is no guarantee that it will compensate for the financial burden on the new marriage.