ZEHMER, Judge
(dissenting).
The majority opinion holds that as a matter of law remarriage does not terminate rehabilitative alimony because “the better approach is to require a paying spouse to show a material and substantial change in circumstances.” Since the remarriage of a spouse receiving alimony, whether rehabilitative or permanent, is per se a material and substantial change in circumstances, the effect of the majority’s holding is that remarriage alone can never serve to terminate rehabilitative alimony regardless of the circumstances and the rehabilitative purpose of the alimony. This result is erroneous, in my view, and is in conflict with the law of this state. While I agree that remarriage does not operate to terminate rehabilitative alimony in every case, I am convinced that it may have such effect if the fact of remarriage either satisfies or frustrates the rehabilitative purpose. In any event, I find it impossible to ascertain the effect of the remarriage in this case without first knowing the purpose of the rehabilitative award. I would, therefore, reverse and remand for the trial court to determine the rehabilitative purpose and in what way, if any, the fact of remarriage affected the accomplishment of that purpose. See e.g. Lee v. Lee, 544 So.2d 1083 (Fla. 1st DCA 1989); Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985); Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983).
The original judgment of dissolution entered September 21, 1984, provides only that “the husband shall pay to the wife as temporary rehabilitative alimony the sum of $200.00 per week for a period of 260 weeks.” The first payment began on September 28, 1984, so the alimony would terminate in September 1989. That judgment contains no indication of the purpose or rehabilitative plan contemplated by this award.[1]
Appellant’s motion to modify the final judgment, filed October 26, 1987, alleges that the alimony should be terminated because there has been a substantial, material change in circumstances in that (a) appellant sustained injuries in an automobile accident that had rendered him totally disabled since September 1986, and (b) appel-lee had remarried on January 1, 1987. The appealed order, entered April 25, 1988, denied appellant’s request for modification of the rehabilitative alimony. The court made extensive findings of fact and found appellant was not disabled from working and *324 had suffered no substantial change of circumstances for that reason. The court found that the former wife had in fact remarried on January 1, 1987, that the new husband had contributed to their mutual support, and that appellee remained married to him at the time of the hearing. The court further found, however, that appellee and her new husband had separated in April 1987, that she was not now receiving any support from her husband and that she has not sought any support from him since the separation. Regarding the effect of this remarriage on appellee’s rehabilitative alimony, the order recites:
As the party requesting modification of the final judgment, the burden is on the former husband to establish that he is entitled to the relief he requests. In this regard, an initial question is whether the fact of the former wife’s remarriage, without more, is sufficient to justify termination of rehabilitative alimony. On this question, the district courts of appeal are in disagreement, and the Supreme Court has not spoken. The Third District has held that remarriage automatically terminates rehabilitative alimony. Blackmon v. Blackmon, 307 So.2d 887 (Fla. 3d DCA 1974). The Second District has held that the fact of remarriage, alone, is not sufficient to justify termination of rehabilitative alimony. Rather, remarriage is merely a factor to be considered, like any other change in circumstances:
[Wjhen the husband here pled and proved nothing showing an altered need of the wife other than the mere fact of her remarriage, the trial court’s refusal to modify on that fact alone should be affirmed. However, this opinion does not preclude a spouse who is paying rehabilitative alimony from pleading and proving that a remarriage or other changed circumstances of the recipient spouse has eliminated or altered the need for further rehabilitative alimony. Once any such evidence other than the mere remarriage has been presented, the burden of proof of continued need should shift to the recipient spouse since the evidence as to the recipient spouse’s economic circumstances or those of the newly acquired spouse is peculiarly within his or her knowledge and may not be readily available to the payor spouse.
Frye v. Frye, 385 So.2d 1383, 1390 (Fla. 2d DCA 1980). See also Faircloth v. Faircloth, 449 So.2d 412 (Fla. 2d DCA 1984); Maas v. Maas, 438 So.2d 1068 (Fla. 2d DCA 1983). The Fifth District has aligned itself with the Second. Markham v. Markham, 485 So.2d 1299 (Fla. 5th DCA 1986); Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985); Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983). The Fourth District has not squarely decided the question. But see Richter v. Richter, 344 So.2d 889 (Fla. 4th DCA 1977). The First District has, likewise, not decided the question. See Kissinger v. Mason, 436 So.2d 1049, 1050 (Fla. 1st DCA 1983) (“[W]e do not find it necessary at this time to decide whether or not rehabilitative alimony should terminate automatically only upon the remarriage of the recipient, and decline to do so”). However, the result in Kissinger strongly suggests acceptance of the Second District approach.
In the absence of a decision in point by either the Supreme Court or the First District, either of which would be binding on this Court, the Court finds more persuasive the approach of the Second District first enunciated in Frye, which approach has been followed by the Fifth District. Thus, the mere fact that the former wife has remarried is not, alone, sufficient to justify termination of her rehabilitative alimony. Remarriage is merely one factor, to be considered with any others, in determining whether there has been a substantial change in the circumstances or the financial abilities of the parties since entry of the final judgment.
[[Image here]]
The former husband has failed to establish that the former wife’s remarriage has in any way reduced her need for rehabilitative alimony. On the contrary, *325 the former wife’s undisputed testimony establishes that her need continues as great as ever, despite her failed remarriage. Likewise, in the Court’s opinion, the former husband has failed to establish either a material change in his financial abilities or that any such change is either permanent or involuntary.
(R. 14, 15).
The trial court has effectively ruled that the fact of appellee's remarriage alone does not legally affect her right to continue receiving rehabilitative alimony, that she remains in need of such alimony as she is living apart from her new husband without further support from him, and that appellant has failed to carry his burden of proving that “the former wife’s remarriage has in any way reduced her need for rehabilitative alimony.” There is no finding or statement in the order identifying the purpose of the rehabilitative alimony in this case and no finding as to the effect of the remarriage on that purpose or plan. Likewise, that purpose is not specifically identified in the record, and is not readily determinable from the record on appeal.[2] Since we can only speculate, therefore, as to what that purpose is, I do not know how the trial court could determine whether appellant carried the above described burden.
In Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), the supreme court described the fundamental differences between permanent alimony for support and rehabilitative alimony. As to the former, the court explained, “Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties_ As a general rule, permanent periodic alimony is terminated upon the death of either spouse or the remarriage of the receiving spouse.” 382 So.2d at 1201-02. Regarding the latter, the court said, “The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills.” 382 So.2d at 1202. In Campbell v. Campbell, 432 So.2d 666, 668 (Fla. 5th DCA 1983), the court said, “In Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980), this court described rehabilitative alimony as that coming from a financially able spouse to a needy spouse ‘to assist the needy [one] in adjusting to a new life and to aid in obtaining new skills, education and/or other rehabilitation.’ We described it as the type of support whose purpose was often to assist the spouse in obtaining a skill and a return to the marketplace.” Thus, it has been repeatedly held that rehabilitative alimony solely for support purposes does not comport with applicable legal principles when the r.ecord does not establish that the receiving spouse’s actual or potential capacity to achieve self-support through the education or skill improvement contemplated by the rehabilitative plan; in such instances the law precludes the award of rehabilitative alimony and requires or treats an award as one for permanent periodic alimony for support, usually without limitation of time. E.g. Evans v. Evans, 507 So.2d 1130 (Fla. 1st DCA 1987); Pierson v. Pierson, 462 So.2d 613 (Fla. 2d DCA 1985); Elliott v. Elliott, 458 So.2d 1204 (Fla. 1st DCA 1984); Campbell v. Campbell, 432 So.2d 666; McNaughten v. McNaughten, 332 So.2d 673 (Fla. 3d DCA 1976).
The record in the instant case indicates that the appellee had worked in appellant’s store during the marriage and presumably possessed some business skills that could be improved during the rehabilitative period and likely to lead to self-support. However, nothing in the record indicates what was expected of the appellee in that regard, and her testimony developed by appellant’s counsel at the hearing on the motion for modification indicates no efforts toward rehabilitation. Since the dissolution she had worked as a cashier for a lumber company at $4.00 per hour and after that as a receptionist at a sun tanning salon which was currently paying her $5.00 per *326 hour. She had not taken any school or other course work to further develop her skills in the marketplace, either before or after her minor child reached 18 years and left home. The record will support a finding that appellee has always treated the rehabilitative alimony award as a means of support, and nothing more. It will also support a finding that the award was intended by the original judgment to provide both support during the rehabilitative period and in part money for obtaining further skill enhancement training. Findings on these matters must be explicitly made by the trial court, however, not by this court. E.g. Kristensen v. Kristensen, 433 So.2d 598 (Fla. 5th DCA 1983); Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980).
In Frye v. Frye, 385 So.2d 1383 (Fla. 2d DCA 1980), the principal decision relied on by the majority in this case, the court said:
However, since rehabilitative alimony is paid for a specific purpose not necessarily related to the recipient spouse’s remarriage, it would seem to follow that it should not necessarily be terminated upon remarriage. True, rehabilitative alimony does serve a support function and is usually awarded instead of permanent alimony. Nonetheless, the ultimate purpose of rehabilitative alimony is rehabilitation, and the question upon the recipient’s remarriage should be whether that event alone has served the rehabilitative function.
385 So.2d at 1389-90. This language, however, should not be read as precluding the termination of that portion of the rehabilitative alimony award for support purposes upon the recipient’s remarriage. The new husband’s duty of support would certainly satisfy the purpose of support included in the rehabilitative alimony. Moreover, the court’s reliance on Judge Dauksch’s concurring opinion in Richter v. Richter, 344 So.2d 889 (Fla. 4th DCA 1977), would belie such a construction, as he concurred with the court in reversing the continuation of rehabilitative alimony after the recipient’s remarriage under the circumstances of that case. To give such a construction to the Frye opinion would also place that decision in direct conflict with other decisions which have remanded with directions that the trial court determine and terminate that portion of the rehabilitative award made for support purposes. Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985; Bentzoni v. Bentzoni, 442 So.2d 235 (Fla. 5th DCA 1983). See also Lee v. Lee, 544 So.2d 1083 (Fla. 1st DCA 1989); Frye v. Frye, 385 So.2d at 1390 (Grimes, J., dissenting). Yet, the effect of the majority’s decision in the instant case is just that, that is, absent a change of circumstances other than remarriage rehabilitative alimony continues irrespective of the purpose of the rehabilitative award.
Thus, it makes no sense to me to fashion a blanket rule that simply says, rehabilitative alimony does not terminate upon the recipient’s remarriage without a showing of substantial change in circumstances other than the remarriage, irrespective of the rehabilitative purpose and objective of such alimony. Plainly, such a rule would enable the recipient to continue receiving alimony solely for her support long after her remarriage and the former husband’s duty of support has ended, a result that is contrary to public policy and the principles generally applicable to termination of support alimony upon remarriage.
For these reasons, I would reverse the appealed order and remand for further findings of fact on the critical issues not explicated in the appealed order. Appellate courts do not hesitate to do so where such findings are essential to facilitate effective appellate review. See Calhoun v. Calhoun, 554 So.2d 21 (Fla. 1st DCA 1989); Strickler v. Strickler, 548 So.2d 740 (Fla. 1st DCA 1989); Clemson v. Clemson, 546 So.2d 75 (Fla. 2d DCA 1989); Lee v. Lee, 544 So.2d 1083 (Fla. 1st DCA 1989); Eisner v. Eisner, 513 So.2d 673 (Fla. 1st DCA 1987); DePoorter v. DePoorter, 509 So.2d 1141 (Fla. 1st DCA 1987).

. This court affirmed the former husband’s appeal from the final judgment, holding the record did not reflect any abuse of discretion in awarding rehabilitative alimony in conjunction with lump sum alimony and child support. That appeal complained about the combined amount of the award to the former wife. The husband did not challenge the propriety of the rehabilitative award on that appeal, although the judgment was silent as to its purpose. Notably, that opinion recites that "this court’s task of evaluating the final judgment of dissolution has been unnecessarily complicated by a final judgment that is vague and ambiguous. The trial judge could have made findings of fact, supported by the record, which would have strengthened the conclusions and resulting awards which are the subject of this appeal.” Owens v. Owens, 500 So.2d 170 (Fla. 1st DCA 1986).

. It should be noted that the judge who entered the appealed order was not the same judge who heard the dissolution case and entered the original award of rehabilitative alimony.