648 So.2d 1206 (1995)
Donna M. VACCATO, f/k/a Donna Marie Pustizzi, Appellant,
v.
Dennis Joseph PUSTIZZI, Appellee.
No. 93-0202.
District Court of Appeal of Florida, Fourth District.
January 11, 1995.
Nancy J. Cliff of Baron and Cliff, Miami, for appellant.
Todd R. Schwartz and Edward A. Perse of Perse & Ginsberg, P.A., Miami, and Michael Chase of Law Office of Chase & Chase, North Miami Beach, for appellee.
EN BANC
POLEN, Judge.
Former wife appeals the trial court order ratifying and adopting the report of the general master which recommended that the former wife's rehabilitative alimony be terminated. We affirm, but we sua sponte determined to consider this case en banc, to address an issue of exceptional importance.
At a hearing on the former husband's petition to terminate alimony, the husband argued that there had been a substantial change in circumstances, in that the former wife had remarried and her needs had decreased. The only evidence presented at the hearing was the testimony of the former wife. No evidence at all was presented by the former husband. In her report the general master found, inter alia, that the former wife had remarried, that the agreement was *1207 silent regarding the effect of remarriage on the rehabilitative alimony, that the former wife had "failed diligently to pursue rehabilitation as specifically provided in [the parties'] agreement," and that she "never had any intention to rehabilitate herself with the terms of getting a full time job." With respect to rehabilitative alimony, the general master found that the parties' property settlement agreement provided that former husband was to pay former wife no more than $350 per week for a period of four years to compensate her for any drop in earnings she received as a result of leaving the employ of the family plumbing business and that the former wife would endeavor to obtain similar paying employment on a full time basis. The report of the general master concluded by ruling that in view of her findings, she recommended, inter alia, that the rehabilitative alimony be terminated. Subject only to timely filed objections, the trial court ratified the report in all respects.
Because the agreement was silent regarding what event, other than the expiration of the four year period, would terminate the rehabilitative alimony, the general master could not rely on any specific provision in the agreement to authorize termination of rehabilitative alimony on the grounds that the former wife remarried or had failed to obtain or to endeavor to obtain full time employment. Former husband contends that rehabilitative alimony automatically terminates upon remarriage of the recipient spouse. Because we find neither authority, nor reasons of policy, to support such a rule, we disagree. However, we note that this district has not clearly addressed this issue; we now consider it en banc.
Of the five appellate districts in Florida, the other four districts have already clearly stated that remarriage should not be an automatic condition upon which rehabilitative alimony is terminated. See Owens v. Owens, 559 So.2d 321, 323 (Fla. 1st DCA 1990) (court held that it would be unwise to require automatic termination of rehabilitative alimony upon remarriage of a recipient spouse, and instead a paying spouse should be required to show a material and substantial change in circumstances); Karch v. Hoffman, 534 So.2d 1229, 1230 (Fla.3d DCA 1988) (court clarified its position taken in Blackmon v. Blackmon, 307 So.2d 887 (Fla.3d DCA 1974), and it stated that it is not remarriage which automatically terminates rehabilitative alimony, but instead, a substantial change in circumstances); Frye v. Frye, 385 So.2d 1383, 1390 (Fla.2d DCA 1980) (court held that mere fact of remarriage without anything more is not enough to terminate rehabilitative alimony). The only opinion touching on this issue which we have found from this district, Richter v. Richter, 344 So.2d 889 (Fla. 4th DCA 1977), might be construed as holding that remarriage alone is enough to terminate rehabilitative alimony. In the one paragraph opinion in the Richter case, which contains no factual background, this court wrote, "[w]e also hold that the trial court improperly ordered that the rehabilitative alimony awarded to wife continue regardless of her remarriage." Richter, 344 So.2d at 890. At best, however, such language is ambiguous. Certainly, one possible interpretation may be that the majority in Richter felt that the wife's remarriage automatically terminated her right to rehabilitative alimony. However, without having the benefit of any of the conditions surrounding wife's remarriage, it is quite difficult to say what motivated the trial court's decision. An equally probable inference is that the trial court refused to consider termination without hearing any of the surrounding circumstances (i.e., material change in circumstances). Perhaps experiencing similar frustration with such ambiguity, Judge Dauksch wrote a detailed concurring opinion where he agreed with the Richter court's result, but admonished:
The days when women married for support have passed and the roles of the partners to a marriage are not stereotyped but vary from family to family. Thus for this court to determine that rehabilitation occurs or doesn't occur upon remarriage is not grounded on reason. The provision that rehabilitative alimony would continue regardless of remarriage should be amended to read may continue regardless of remarriage in order to give to the parties an opportunity to "show cause" if remarriage occurs.
*1208 Id. (Dauksch, J., concurring specially) (emphasis in original). Even though the Richter case did precede the cases which held that a substantial change in circumstances should determine whether or not to terminate rehabilitative alimony, Judge Dauksch's prophetic "show cause" standard certainly suggests that the idea was one to be considered in future decisions of this court.
Accordingly, we now embrace the rule that follows Florida's other four DCAs, as well as Judge Dauksch's reasoning in his concurring opinion in Richter. Remarriage alone should not be determinative of whether rehabilitative alimony should terminate, but rather should be one factor from which the trial court decides whether there has been a material change in circumstances warranting such termination. If, for example, a spouse who was initially awarded several years rehabilitative alimony to enable him or her to attend law school, should fall in love with and marry a starving poet he or she met on campus in the middle of the second semester, this fact alone should not automatically preclude the spouse from continuing on the road to a law degree. Conversely, if while enrolled in law school, the person fell in love with the heir to the Westlaw fortune and remarried, then the trial court could view that remarriage as a means to terminate rehabilitative alimony in light of the substantially changed financial circumstances. Because these two remarriages have drastically different effects on the recipient spouses, we cannot espouse a rule that would treat them identically while completely overlooking the difference in their circumstances. Accordingly, it is the opinion of this court that rehabilitative alimony does not automatically terminate upon remarriage of the recipient spouse.
As to the secondary finding of the trial court, that former wife was no longer entitled to rehabilitative alimony because she breached the property settlement agreement, we agree. We do find that her failure to look for a job breached the provision of the agreement which required that she endeavor to obtain similar paying full time employment. Because this breach in and of itself would have been enough to terminate former wife's rehabilitative alimony, the general master's further consideration of the former wife's remarriage does not render invalid her recommendation to terminate rehabilitative alimony.
Therefore, we affirm the decision of the trial court on the basis that there was a breach of the property settlement agreement.
DELL, C.J., and HERSEY, GLICKSTEIN, WARNER, KLEIN, PARIENTE and STEVENSON, JJ., concur.
GUNTHER, J., concurs specially with opinion in which STONE and FARMER, JJ., concur.
GUNTHER, Judge, concurring specially.
Although I agree with the result reached by the majority, I write separately to address the issue of whether rehabilitative alimony automatically terminates upon the remarriage of the recipient spouse. In my opinion, the remarriage of a recipient spouse should terminate rehabilitative alimony as a matter of law.
The facts of the instant case need no repeating as they are sufficiently presented in the majority opinion. Case law and policy considerations, however, support the theory that the general master's ruling can be upheld on the proposition that the former wife's remarriage automatically terminated her rehabilitative alimony.
In Richter v. Richter, 344 So.2d 889 (Fla. 4th DCA 1977), without a factual discussion or analysis, this court simply held, inter alia, "that the trial court improperly ordered that the rehabilitative alimony awarded to wife continued regardless of her remarriage." In reversing the trial court, this court cited Blackmon v. Blackmon, 307 So.2d 887 (Fla. 3d DCA 1974). In Blackmon, the majority commented that the parties had stipulated that the wife's subsequent marriage was to a gentleman possessed of ample funds to support her, thereby implying she no longer had a need for rehabilitative alimony. The court further commented "that the Florida courts have recognized the right of a trial court to modify rehabilitative alimony when the circumstances *1209 of the parties have changed." Id. at 888. In reversing the trial court's order that converted the former wife's rehabilitative alimony to lump sum alimony upon her marriage, the Blackmon opinion implicitly held that remarriage is a substantial material change of circumstances which results in the termination of all rehabilitative alimony.
After this court's Richter opinion, however, the third district in Karch v. Hoffman, 534 So.2d 1229 (Fla. 3d DCA 1988), clarified its Blackmon opinion and stated:
We do not read Blackmon to automatically terminate rehabilitative alimony on remarriage. In Blackmon the court found a change of circumstances which could have been the remarriage "to a gentleman possessed of ample funds to support [the ex-wife]," rather than the mere fact of a remarriage. Other districts in Florida are in accord. See Frye v. Frye, 385 So.2d 1383 (Fla. 2d DCA 1980) (unless the parties specifically agree, rehabilitative alimony does not necessarily terminate on the remarriage of the recipient)
.....
However, resolution of the remarriage-rehabilitative alimony controversy may be reserved for another day .. . [W]e are of the view that the award is, in effect, a form of additional child support.
Karch, 534 So.2d at 1230. Nonetheless, I would conclude that this court's Richter opinion, written before Karch v. Hoffman, aligned this court with the proposition that rehabilitative alimony is automatically terminated, as a matter of law, upon the remarriage of the recipient spouse.
Our sister courts have addressed this issue in various cases. In Owens v. Owens, 559 So.2d 321 (Fla. 1st DCA 1990), the first district stated that the third district's Karch opinion's characterization of Blackmon suggested that there was no case law explicitly holding that rehabilitative alimony automatically terminates upon remarriage of the recipient spouse. Owens, 559 So.2d at 323. Contending that there was no case law to the contrary, the Owens court believed that it would be unwise to require automatic termination of rehabilitative alimony upon remarriage of the recipient spouse. The Owens majority concluded that the better approach would be to require a paying spouse to show a material and substantial change in circumstances. Id. Along the same line is the second district's opinion in Frye v. Frye, 385 So.2d 1383 (Fla. 2d DCA 1980). Reasoning that rehabilitative alimony is paid for a specific purpose not necessarily related to the recipient spouse's remarriage, the Frye court held that remarriage will not terminate rehabilitative alimony absent a showing of a change in economic circumstances. Frye, 385 So.2d at 1389-1390.
I disagree with the conclusions reached in Owens and Frye. In my view, remarriage of the recipient spouse, standing alone, is a material and substantial change in circumstances. As such, I align myself with the view expressed in Judge Grimes' dissenting opinion in Frye:
The law of Florida has always been that permanent alimony automatically terminates upon remarriage of the recipient spouse. I can see no meaningful distinction between permanent and rehabilitative alimony which would require a different result when the remarriage of the spouse receiving alimony occurs. The arguments advanced by Judge Campbell to support the contention that rehabilitative alimony should not automatically terminate upon remarriage would appear to be equally applicable to permanent alimony. Until the rule with respect to permanent alimony is changed, I believe that rehabilitative alimony automatically terminates upon the remarriage of the recipient spouse ... [T]he Supreme Court said as much in Canakaris [v. Canakaris, 382 So.2d 1197 (Fla. 1980)].
Frye, 385 So.2d at 1390.
I likewise can see no meaningful distinction between permanent and rehabilitative alimony which would dictate a different result when the remarriage of the recipient spouse occurs. Permanent alimony terminates upon remarriage because the obligation to provide the needy spouse with the basic necessities of life has shifted to another. The duty to rehabilitate so too should shift. Accordingly, I would hold that upon remarriage *1210 of a recipient spouse, rehabilitative alimony terminates as a matter of law.