MOORE, Judge,
dissenting.
I respectfully dissent from the main opinion’s affirmance of the trial court’s judgment.
The original divorce judgment, which was entered on April 17, 2003, provided, in pertinent part:
“14. [The former husband] shall pay the [former wife] rehabilitative periodic alimony of $750.00 per month beginning April, 2003 for a period of 3 years. Thereafter, the Court reserves the right to award periodic alimony....
“15. ... [The former wife] is encouraged to find employment. In the event, the [former wife] gets employment and earns under $30,000 per year, the rehabilitative alimony provision will not be reduced due to her employment wages under $30,000 per year. ...”
In the former wife’s motion to modify the 2003 divorce judgment, she alleged that she was currently enrolled as a sophomore at the University of South Alabama, that she was pursuing a teaching degree *682 while working as a full-time substitute teacher in the Mobile County Public School System, and that she would need approximately three more years to complete her degree through night classes. The former wife stated that she “is in need of continued periodic alimony in order to complete her schooling to become gainfully employed.” Therefore, she requested that the trial court enter an order modifying the alimony provisions of the 2003 divorce judgment to provide that her “alimony be continued until such time as she can complete her studies and receive her diploma
At the outset of the trial of this cause, the attorney for the former wife indicated that the parties had resolved all the issues raised in the former wife’s motion except “the remaining issue ... on the extension of rehabilitative alimony.” After reading paragraphs 14 and 15 of the 2003 divorce judgment, the former wife’s counsel then stated that “[t]he issue I think today for the Court to decide is does the $750 a month continue because we would proffer that she[, the former wife,] still makes less than $30,000.”[1] The former husband’s counsel responded that, under Banks v. Banks, 336 So.2d 1365, 1367 (Ala.Civ.App.1976), a rehabilitative-alimony provision that terminates on a specified date can be modified only if the movant files a petition to modify that provision before its termination date and that, because the former wife had failed to file her modification petition before April 17, 2006, the trial court had no jurisdiction to extend her rehabilitative alimony. After considering those arguments, the trial court noted that, unlike the judgment at issue in Banks, the 2003 divorce judgment specifically reserved jurisdiction to award periodic alimony, and it stated: “I can award periodic alimony in the future based on that reservation alone .... ” The trial court then took testimony regarding the issue of “why should I give additional periodic alimony?”
That testimony established that, at the time of the entry of the 2003 judgment, the former wife had attained less than a year of college credits and was not employed, although she had learned secretarial skills and had previously worked at Spring Hill College. The former wife became employed in May 2003 as a retail cashier earning $6 per hour and working 25 to 35 hours per week. Thereafter, the former wife also began working part-time as a substitute teacher, earning $40 per day without fringe benefits, while also working her cashier job at nights and on weekends.[2] In the summer of 2004, the former wife returned to college, first enrolling at Bishop State Community College, then at Spring Hill College, and, finally, in the fall of 2005, at the University of South Alabama. By the fall of 2006, the former wife had earned the 60 hours of college credit required to work as a teacher’s aide.
After becoming a teacher’s aide, the former wife decided to become a teacher, which requires an undergraduate degree in education. The former wife continued to attend the University of South Alabama at night in its adult-education program, *683 earning six hours of college credit per semester while working toward that degree. In addition, the former wife took extra courses in the summer when she was off work. The former wife anticipated that, at a rate of six credit hours per semester, she would graduate in the spring or the summer of 2010. At the time of the hearing, the former wife was working as a teacher’s aide from 7:30 a.m. to 3:30 p.m. daily and was attending classes three nights a week from 6:00 p.m. to 8:30 p.m.
The former wife testified that, since the 2003 divorce, her living expenses totaled approximately $1,900 per month. That figure included $566 per month for a mortgage on a house she had purchased for $93,000, having paid 5% down from money she had received from cashing in an individual retirement account. That figure did not include her tuition costs of $1,500 per semester or her book costs and other fees. The former wife testified that she paid her tuition with grants that she did not have to repay[3] and student loans that she did have to repay. The former wife estimated that she owed close to $30,000 in student loans. The former wife stated that she had borrowed $10,000 for the 2007-2008 school term. After paying her tuition, the former wife had placed the remainder of the loan funds in “reserve.” At the time of the hearing, she had $4,000 in her savings account and $3,000 to $4,000 in her checking account. The former wife testified that she had used her financial aid to cover the living expenses she could not cover with her monthly wages of $1,096[4] and her monthly child support of $607, which, when combined, total $1,703 per month. The former wife had been receiving $750 per month in alimony, but that had ceased in April 2006.
The former wife testified as follows:
“Q. [Former wife’s counsel]: [W]hat are you asking the Court to do in regard to the reservation of alimony that is provided for in paragraph 14 and 15 in the judgment of divorce?
“A: I am just asking this Court, Judge, that I don’t want to live off this man forever, I just want enough to cover until I get out of school which is estimated in spring or summer of 2010. And I guess it has taken me longer to get through school because I am a mother and maintaining my house and I have had some health problems, too, but I am doing the best that I can right now for my daughter and working full-time and going to school at night. And like I said, just an extension long enough until I get out of school.”
The former husband testified that, since the 2003 divorce, he had been employed at the same place earning about the same wages.[5] He testified that, out of those wages, he had paid the former wife $607 per month in child support and $750 per month in alimony. The former husband objected to paying further alimony because, he said, he believed he had complied fully with the 2003 judgment; he also testified that part of the reason the parties *684 had divorced was because the former wife had refused to return to work and help pay their bills. The former husband testified that, although he had never tried to work, raise a child, and go to school simultaneously, he believed three years was sufficient time for the former wife to complete her education and obtain a job.
Following the hearing, the trial court entered a judgment on February, 21, 2008, stating, in pertinent part:
“1. With respect to the remaining issue left for the Court, the Court ... does order the [former husband] to pay the [former wife] $300 per month as temporary periodic alimony until May 2010.
“2. The Court does note that it is an extreme remedy for the Court to enlarge the temporary periodic alimony; however, in this case the Court does find that [the former wife] is working and going to school and is trying very hard to better herself which should benefit their child in the long run. The [former husband]’s assistance will help the [former wife] not have to go into as much debt to improve her life situation. This periodic alimony will be required so long as the [former wife] takes at least six credit hours per semester and shall begin February 2008 and end May 2010.”
(Emphasis added.)
On appeal, the former husband argues that the trial court exceeded its discretion in modifying the rehabilitative-alimony award because the former wife did not file her motion to modify until after the time set for the termination of that award. I agree.
In this case, the trial court stated in the February 21, 2008, judgment that it was awarding “temporary periodic alimony.” Periodic alimony is money used to support a former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage. O’Neal v. O’Neal, 678 So.2d 161, 165 (Ala.Civ.App.1996). Rehabilitative alimony is that “sub-class of periodic alimony” designed to allow a spouse “time to re-establish a self-supporting status.” Jeffcoat v. Jeffcoat, 628 So.2d 741, 743 (Ala.Civ.App.1993), overruled on other grounds, Crenshaw v. Crenshaw, 816 So.2d 1046, 1048 (Ala.Civ.App.2001).
“Rehabilitative alimony is a way of supporting an economically dependent spouse through a limited period of reeducation or retraining following divorce, thereby creating an incentive and opportunity for that spouse to become self-supporting.”
24A Am.Jur.2d Divorce and Separation § 759 (2008). “In short, the purpose of rehabilitative alimony is to restore to a spouse who, because of the marriage, was either prevented from becoming or chose not to become self-supporting, those skills which would enable her or him to support herself or himself.” Frye v. Frye, 385 So.2d 1383, 1389 (Fla.Dist.Ct.App.1980).
In the February 21, 2008, judgment, the trial court obviously awarded the former wife that form of periodic alimony known as “rehabilitative alimony.” See Cheek v. Cheek, 500 So.2d 17, 19 (Ala.Civ.App.1986) (holding that the substance of the alimony award takes precedence over its label). The former wife specifically moved the court to modify the provisions in the divorce judgment in order to allow her to complete her education. At the outset of the trial, her attorney indicated that the former wife was seeking to continue or extend “rehabilitative alimony.” The evidence presented by the former wife focused solely on her financial needs during the period when she was pursuing her *685 college education. The former wife specifically testified that she wanted her alimony extended “just until I get out of school.” Most importantly, in its judgment, the trial court specifically stated that it was “enlarging” the former wife’s alimony in order to assist the former wife from going into greater debt while she was improving her life situation. The trial court specifically stated that the award would last only until May 2010, a date the former wife testified to as a projected graduation date, and further stated that the award would be payable only so long as the former wife “takes at least six credit hours per semester.”
Generally speaking, in order to obtain modification of a rehabilitative-alimony award, a recipient spouse must file a petition for modification before the expiration of the award. See, e.g., Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008). In this ease, by the terms of the 2003 divorce judgment, the award of rehabilitative alimony expired on April 17, 2006. The former wife did not file her modification petition until June 28, 2006, two months later. Based on the general rule, the trial court did not have jurisdiction to award the former wife additional rehabilitative alimony.
The trial court reasoned that it could nevertheless award the former wife additional rehabilitative alimony based on the clause in its 2003 judgment in which it “reserv[ed] the right to award periodic alimony.” Our cases uniformly hold that it is error for a trial court to award rehabilitative alimony without reserving jurisdiction to award periodic alimony. See Fowler v. Fowler, 773 So.2d 491, 495 (Ala.Civ.App.2000), overruled on other grounds, J.L. v. A.Y., 844 So.2d 1221, 1225 (Ala.Civ.App.2002); and Giardina, supra. By requiring a trial court to reserve jurisdiction to later award periodic alimony following a period of rehabilitative alimony, those cases suggest a distinction between the broader class of alimony known as periodic alimony and the subclass known as rehabilitative alimony. See Coby v. Coby, 489 So.2d 597, 597 (Ala.Civ.App.1986) (“The wife, through able counsel, appeals, contending that she was entitled to periodic alimony or, alternatively, to ‘rehabilitative’ alimony.” (emphasis added)). Based on my review of pertinent Alabama caselaw, I have not uncovered a single case explaining that distinction and deciding whether a reservation of jurisdiction to award “periodic alimony” includes the authority to revive an award of rehabilitative alimony after it has expired by the terms of the judgment.
It may be argued that a reservation of jurisdiction to award periodic alimony naturally includes a reservation of jurisdiction to award rehabilitative alimony because, as has already been noted, the latter is a subclass of the former. However, such a reading would render the time limitation on an award of rehabilitative alimony totally meaningless. “Courts are to construe judgments as they construe written contracts, applying the same rules of construction they apply to written contracts.” State Pers. Bd. v. Akers, 797 So.2d 422, 424 (Ala.2000). A provision in a contract should not be construed so as to render another portion of the contract meaningless. Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995). Rather, courts should strive to construe the two provisions together to give effect to each. Id.
In construing a written instrument with seemingly conflicting clauses, the specific provision prevails over a general provision relating to the same subject matter. See, e.g., Alabama Dep’t of Revenue v. Jim Beam Brands Co., 11 So.3d 858, 862-63 (Ala.Civ.App.2008); and Ward v. Check *686 Into Cash of Alabama, LLC, 981 So.2d 434, 438 (Ala.Civ.App.2007). Thus, to harmonize the two clauses and to give full effect to each, a general reservation of jurisdiction to award “periodic” alimony that follows a clause awarding rehabilitative alimony for a specific duration cannot be construed as granting to the trial court authority to revive the award of rehabilitative alimony after it has expired. Rather, it only reserves to the trial court the authority to determine, based on the results of the recipient spouse’s rehabilitation efforts and other material circumstances then existing, whether equity demands that the spouse receive periodic alimony designed to maintain his or her former standard of living and to fix an award based on that determination.
In this case, the trial court did not award the former wife alimony designed to maintain her former standard of living. In fact, no evidence was adduced at trial regarding the standard of living the wife enjoyed during the parties’ marriage. Instead, the trial court impermissibly revived the rehabilitative-alimony award in this case, reduced it to $300 per month, and conditionally extended it to May 2010. Based on the foregoing reasoning, I believe that the trial court acted outside its jurisdiction in reviving the rehabilitative-alimony award and that the February 21, 2008, judgment is therefore void. Because the majority of the court believes otherwise and affirms that judgment, I respectfully dissent.

. I interpret paragraph 15 as preventing the former husband from petitioning the trial court during the stated three-year period to reduce his obligation to pay rehabilitative alimony on the basis that the former wife has obtained employment if the wages from that employment do not exceed $30,000 per year. Hence, I do not agree with the former wife’s contention that paragraph 15 implies that rehabilitative alimony will continue if she is not earning wages over $30,000 by April 17, 2006.

. Apparently, the former wife discontinued working two jobs at some point, but the record is not clear as to when that occurred.

. At one point, the former wife testified that had she received $2,000 to $3,000 in grants for one semester, which would have covered her entire tuition costs, but she later stated that she was mistaken. The record contains no evidence of the amount of the grants the former wife has received.

. The evidence established that the former wife had earned $19,990 in 2003, $17,286 in 2004, $16,028 in 2005, $10,688.40 in 2006, and $14,916.84 in 2007.

.The former husband earned $64,380 in 2005, $60,089.54 in 2006, and either $54,931 (as evidenced by a W-2 form the former husband introduced) or $61,811.45 (as evidenced by a W-2 form the former wife introduced) in 2007.